HAROLD L. DILLARD et al., Appellants, v LITTLE LEAGUE BASEBALL INCORPORATED et al., Respondents.

Fourth Department, January 21, 1977

*Lawler & Ferris (Robert H. Lawler* of counsel), for appellants.

*Hancock, Estabrook, Ryan, Shove & Hust (John Cherundolo* of counsel), for respondents.

MARSH, P. J. Plaintiffs appeal from an order and judgment granting defendants' motion for summary judgment dismissing their complaint.

Plaintiff Harold L. Dillard alleges in his complaint that he was contacted by defendant Lyncourt Little League, Inc., and requested to umpire for little league baseball games and that it was his understanding that he was to be supplied with adequate protective equipment. On May 22, 1970 he was requested to umpire a Lyncourt Little League game in which he was provided an umpire's mask and chest protector but no shin guards or groin protectors. During the course of the game a ball thrown by a little league pitcher John Rotondo got by the catcher and rolled toward the backstop screen out of play. Plaintiff stepping back from his position as umpire called "time out" while the catcher retrieved the ball. While time was called and plaintiff was looking away from home plate, the pitcher threw another pitch in the direction of home plate which struck the plate, bounced upwards and struck plaintiff in the groin causing serious injuries. Plaintiff asserts negligence on behalf of Little League Baseball Incorporated and Lyncourt Little League for failure to provide him with the proper protective equipment. The negligence asserted against infant John Rotondo consists in his failure to heed the time out called by plaintiff and negligently pitching a ball while plaintiff's attention was turned from the plate.

In an examination before trial plaintiff testified that he became associated with Lyncourt Little League in 1968 and that his son played in the league in 1969. Plaintiff acted as a coach in 1969 for the team that his son was on. The age group of the children was 10 or 11. During the 1969 season plaintiff coached defendant John Rotondo and instructed him that he was not to throw a ball after an umpire called time out, until the game was called back into play. On May 22, 1970, the date of the accident, Rotondo was nine years of age.

As a matter of law, plaintiff assumed the risk of the injury that he sustained by the pitch of the nine-year-old infant, John Rotondo, based upon the facts presented by plaintiff in his examination before trial and the allegations of his com-

plaint. In *McGee v Board of Educ.* (16 AD2d 99) plaintiff was injured in the course of a baseball practice routine while acting as a pitching coach. The head coach had asked plaintiff to help develop the pitching staff upon the high school baseball team because plaintiff, a teacher at the school, had considerable previous experience with baseball. While plaintiff was standing behind the pitcher, the coach at home plate was hitting bunts which were fielded by the pitcher or other members of the infield and thrown to first base. During the course of the practice a runner had advanced to second base, a bunt was hit to third base, the third baseman threw to first base, the runner on "second" started to advance to "third" and the head coach at home plate hollered to get the man at "third". The first baseman in throwing the ball to "third" hit plaintiff in the head. Plaintiff at the time was attending to the pitcher and inattentive to the play at "third". The court held as a matter of law that plaintiff has assumed the risk of such a throw to third base. "Generally, the participants in an athletic event are held to have assumed the risks of injury normally associated with the sport [citation of authorities]. Players, coaches, managers, referees and others who, in one way or another, voluntarily participate must accept the risks to which their roles expose them. Of course, this is not to say that actionable negligence can never be committed on a playing field. Considering the skill of the players, the rules and nature of the particular game, and risks which normally attend it, a participant's conduct may amount to such careless disregard for the safety of others as to create risks not fairly assumed. But it is nevertheless true that what the scorekeeper may record as an 'error' is not the equivalent, in law, of negligence." *(McGee v Board of Educ., supra,* pp 101-102.)

In dealing with a horseback riding injury, the court in *Diderou v Pinecrest Dunes* (34 AD2d 672) affirmed the breadth of the doctrine. "As respects voluntary participation in a sport, the doctrine of assumption of risk applies to any facet of the activity inherent in it and to any open and obvious condition of the place where it is carried on * * * and imports a knowledge and awareness of the particular hazard that caused the injury". *(Diderou v Pinecrest Dunes, supra,* p 673.)

In *Luftig v Steinhorn* (21 AD2d 760, affd 16 NY2d 568) defendant operated a summer resort which had as part of its facility a baseball diamond. Plaintiff was injured while playing baseball in an attempt to catch a fly when he tripped in a hole

and fell. Two of plaintiff's witnesses said that there were plain and visible holes all over the field. The court pointed out that since the holes were open and obvious, plaintiff had assumed the risk of playing on a ball field where he was aware of the very risk from which he sustained the later injury when he commenced play. In *Hoffman v Silbert* (24 AD2d 493, affd 19 NY2d 661) plaintiff spent a week at defendant's hotel during which he became involved in a ping-pong tournament. He qualified for the semifinals and during the course of playing a semifinal game, put his arm through a glass window six to seven feet to the rear of the ping-pong table. The court held that he had assumed the risk of the confined playing area as he was fully aware of the area of maneuverability.

Awareness of the general scope of the risk combined with the skill and experience of the actor in question are primary factors influencing the determination whether the assumption of risk doctrine will be applied. Thus, in *Arnold v Schmeiser* (34 AD2d 568) a nine-year-old boy was held not to have assumed the risk where he was asked by two older boys in the neighborhood to play fireman's chair. They hurled plaintiff into the air, then walked away and allowed him to hit the ground without making any attempt to catch him, although they promised they would catch him. The court held that plaintiff did not assume the risk of defendant's total failure to make any attempt to catch him and that plaintiff did not assume the risk of a total absence of a fireman's chair. In *Schmerz v Salon* (26 AD2d 691) plaintiff rented a bungalow from defendant for the summer and between the bungalows maintained by defendant a baseball field was provided for the guests. Plaintiff was running down the baseline and tripped when his foot caught in a hole. The court held that defendant had breached the obligation to keep the base paths free of hidden holes where the grass was grown over and plaintiff had no knowledge previous to the injury of the existence of the holes. In *Alpert v Finkelstein* (42 AD2d 515) plaintiff played on a local gym floor open to the public. On one side of the gym was a receptable to hold the basketballs. Defendant, who had just completed the game at another court, threw his basketball at eye level across plaintiff's court at the receptacle but it hit plaintiff in the eye and broke his glasses. The court held that it was error to charge the jury on the assumption of risk. Plaintiff had not been apprised of this aspect of danger and no proof was offered that it was the practice to throw basketballs

across courts (see, also, *Stevens v Central School Dist.,* 25 AD2d 871).

Plaintiff coached little league two years before his injury. He must have been aware of the wild pitches and errant play of nine year olds. It cannot be said that it would be a total surprise for a nine year old to throw a pitch after the umpire had called time out and before the umpire had called a resumption of play. This kind of mistake, error, inadvertence or lack of attention is fully to be expected during the heat of a game from so young a player. Plaintiff assumed such a risk when he volunteered without pay to coach this little league baseball team.

Plaintiff's argument that the defendants Little League Baseball Inc. and Lyncourt Little League, Inc. should be held liable for improperly instructing the nine-year-old defendant John Rotondo on proper safety precautions while pitching during a time out is specious in view of plaintiff's testimony in his examination before trial that he personally, as a coach, had instructed Rotondo not to pitch until the umpire called the game back into play. Whatever merit such theory of liability might have, it has no merit based on the facts in the instant case (cf. *Darrow v West Genesee Cent. School Dist.,* 41 AD2d 897).

Plaintiff presented no evidence upon the summary judgment motion that it was the practice of little leagues to provide athletic supporters and protective cups to little league umpires. The affidavit of Frank Salanger, Recreational Director for the City of Syracuse, Department of Parks and Recreation, asserted that as an umpire for 22 years with little league he had never been provided a protective cup or an athletic supporter by the sponsoring league for which he acted as an umpire, although it was the custom for the sponsors to supply a face mask, a chest protector and shin guards.

The risk of being struck by a baseball in the groin while umpiring is reasonably foreseeable. With little expense plaintiff could have provided his own protection with a protective cup. Shin guards, face masks and chest protectors not being personal to one umpire, could be used by other umpires in the league while a protective cup could not be. Plaintiff, an active participant as umpire and, for some time, coach and instructor in little league baseball, assumed the risk inherent in playing a game with youthful and inexperienced participants without a protective cup.

The order and judgment should be affirmed.

CARDAMONE, SIMONS, DILLON and WITMER, JJ., concur.

Order and judgment unanimously affirmed, without costs.