OPINION OF THE COURT
Meyer, J.
The deposition testimony of plaintiff, a professional baseball player, that he was aware of the wet and muddy condition of the playing field on the night he was injured and of the particular puddle in which he fell, that he had during the game called the attention of the grounds keepers to the fact that there was puddling on the field and had previously commented a couple of times to the baseball club manager when the field was wet, established his awareness of the defect which caused his injury and of the risk involved. His contin *275 ued participation in the game in light of that awareness constituted assumption of risk as a matter of law, entitling defendants to summary judgment. There should, therefore, be an affirmance, with costs, of the Appellate Division order.
I
Plaintiff, a member of the New York Yankees team, was injured on June 13, 1975, when he slipped and fell during the ninth inning of a night game with the Chicago White Sox. The game was played at Shea Stadium because Yankee Stadium was then being renovated. Plaintiff testified that he was playing centerfield and was fielding a fly ball hit to right centerfield, that he was running to his left and as he sought to stop running his left foot hit a wet spot and slid, but his right foot stuck in a mud puddle, as a result of which his right knee buckled. The knee injury required three separate surgical procedures and ultimately forced him to retire prematurely from professional baseball.
Plaintiff and his wife (hereafter collectively referred to as plaintiff) sued the city, as owner of Shea Stadium, and the Metropolitan Baseball Club, Inc., as lessee. In a separate action plaintiff sued the general contractor who built Shea Stadium and the architect and the consulting engineer. Both actions charge that the drainage system was negligently designed, constructed or maintained. Claims over by various defendants were made against the maintenance company for Shea Stadium, the New York Yankees and The American League of Professional Baseball Clubs, as employer of the umpires.
After consolidation of the actions and after depositions had been taken, four of the defendants and cross claim defendants moved for summary judgment dismissing the complaints on the ground that plaintiff had assumed the risk. Special Term denied the motions, holding that it could be inferred that plaintiff in continuing to play was acting under his superior’s instructions and that, therefore, there was an issue of fact to be tried. On appeal to the Appellate Division, that court reversed and dismissed both complaints and all claims over. Noting that plaintiff had admitted that the previous night’s game had been canceled because of the weather and poor field conditions, that he had during the game in question observed the centerfield to be "awfully wet” with "some mud” and standing water above the grass line, had reported that condi *276 tian to a ground crew member, and had presented no evidence of an order from a superior after making the condition known, it held that there remained no triable issue of fact as to plaintiff’s assumption of the risk.[1]
Before us, plaintiff argues that he assumed the risks of the game, not of the playing field, which was in an unreasonably dangerous condition, that the risk had in any event been enhanced, that he had no choice but to continue to play, and that the evidence did not establish his subjective awareness that his foot could get stuck in the mud. For the reasons that follow we disagree with that analysis and, therefore, affirm.
II
In Arbegast v Board of Educ. (65 NY2d 161), we noted the common law’s distinction between express and implied assumption of risk and held that, notwithstanding the adoption in 1975 of CPLR 1411, the plaintiff in that case having admitted "that she had been informed both of the risk of injury and that 'the participants were at their own risk’ ” (id., at p 164), her participation in the games there involved constituted an express agreement on her part to assume the risk, entitling defendant to the direction of a verdict (id., at p 162).[2] In the instant case we deal not with express assumption of risk, but with assumption of risk to be implied from plaintiff’s continued participation in the game with the knowledge and appreciation of the risk which his deposition testimony spelled out and which established his implied assumption as a matter of law.
Plaintiff suggests that our adoption in Basso v Miller (40 NY2d 233) of the single standard of reasonable care somehow transmogrified assumption of the risk into a defense that cannot be asserted until defendants (who, as movants for summary judgment, bear the burden of establishing prima facie their right to judgment) have established their own exercise of reasonable care. The suggestion finds no support in *277 either footnote 2 to the Arbegast decision (at p 166) or in Scaduto v State of New York (56 NY2d 762, affg 86 AD2d 682), to both of which plaintiff refers. The Arbegast footnote cited Basso simply as an illustration of the confusion of assumption of risk with absence of duty in the pre-1975 cases, but made no change in the rule that a defendant seeking summary judgment by way of a complete defense in confession and avoidance, such as assumption of the risk or Statute of Limitations, bears no greater burden than the establishment of the defense. And the Appellate Division’s holding in Scaduto, notwithstanding the two sentences in its memorandum concerning assumption, was that the "State did not breach any duty of care to claimant” (86 AD2d, at p 683), which the records of this court show was the basis for our affirmance, without reaching the assumption issue.
No more helpful to plaintiff is our abandonment in Micallef v Miehle Co. (39 NY2d 376, 382-385) of the patent danger doctrine declared in Campo v Scofield (301 NY 468). In the first place, Campo denied recovery "if the dangerous character of the product can be readily seen, irrespective of whether the injured user or consumer actually perceived the danger” (39 NY2d, at p 384). More importantly, Micallef was based on the greater expertise and superior position of a manufacturer to recognize and cure defects over the user of his product injured by its defect, a consideration which, as the Appellate Division pointed out (108 AD2d, at p 45), can hardly be said to be present in relation to a professional athlete, who is both more highly trained and in a better bargaining position than persons injured by consumer products (see also, Turcotte v Fell, 123 Misc 2d 877). Notwithstanding that this is a pre-1975 case in which we would be at liberty to modify the common-law rules of assumption of the risk, just as Campo’s "open and obvious” rule was modified, we decline to take that step, perceiving no reasonable basis for doing so.
Nor does the case law sustain plaintiff’s efforts to avert dismissal of his action on the basis of assumption of the risk law. The risks of a game which must be played upon a field include the risks involved in the construction of the field, as has been held many times before. That the assumption doctrine "applies to any facet of the activity inherent in it and to any open and obvious condition of the place where it is carried on” (Diderou v Pinecrest Dunes, 34 AD2d 672, 673) is borne out not only by that case but also by Hoffman v Silbert (19 NY2d 661, affg 24 AD2d 493 [window in close proximity to *278 ping-pang table]); Luftig v Steinhorn (16 NY2d 568, affg 21 AD2d 760 [hole in a baseball field]); and Lobsenz v Rubinstein (283 NY 600, affg 258 App Div 164 [hole or depression in a tennis court]), cited in Diderou, as well as by Scaduto v State of New York (supra); and Schmerz v Salon (19 NY2d 846, affg 26 AD2d 691), involving, respectively, a drainage ditch near the third base line and a hole in the base path, in both of which assumption of risk was considered although the case was decided on another basis.
There is no question that the doctrine requires not only knowledge of the injury-causing defect but also appreciation of the resultant risk (McEvoy v City of New York, 292 NY 654, affg 266 App Div 445; Larson v Nassau Elec. R. R. Co., 223 NY 14), but awareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff (Dillard v Little League Baseball, 55 AD2d 477, 480), and in that assessment a higher degree of awareness will be imputed to a professional than to one with less than professional experience in the particular sport (see, Heldman v Uniroyal, Inc., 53 Ohio App 2d 21, 36, 371 NE2d 557, 567; Turcotte v Fell, supra). In that context plaintiffs effort to separate the wetness of the field, which he testified was above the grass line, from the mud beneath it in which his foot became lodged must be rejected for not only was he aware that there was "some mud” in the centerfield area, but also it is a matter of common experience that water of sufficient depth to cover grass may result in the earth beneath being turned to mud (Benjamin v Deffet Rentals, 66 Ohio St 2d 86, 91, 419 NE2d 883, 887, holding denial of summary judgment improper because "[i]t is common knowledge, however, that such a [plastic diving board] surface can be slippery, especially when it becomes wet”; Restatement [Second] of Torts § 496D comment d; Prosser and Keeton, Torts § 68, at 488 [5th ed]). We do not deal here, as we did in Schmerz v Salon (supra), with a hole in the playing field hidden by grass, but with water, indicative of the presence of mud, the danger of which plaintiff was sufficiently aware to complain to the grounds keepers. It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results. Nor do the enhancement cases to which plaintiff refers in arguing that the risk of water on the field was enhanced by *279 the failure to install proper drainage facilities (Stevens v Central School Dist. No. 1, 21 NY2d 780, affg 25 AD2d 871; Cole v New York Racing Assn., 17 NY2d 761, affg 24 AD2d 993; Jackson v Livingston Country Club, 55 AD2d 1045; Arnold v Schmeiser, 34 AD2d 568; see, Hornstein v State of New York, 30 AD2d 1012) avail plaintiff, for in each of those cases the enhanced risk that resulted was unknown to the particular plaintiff, whereas here the resulting risk (mud) was evident to plaintiff as is shown by his observation of mud and water and his complaints to the grounds keepers concerning the presence of water to the grass line.
Finally, although the assumption of risk to be implied from participation in a sport with awareness of the risk is generally a question of fact for a jury (Stevens v Central School Dist. No. 1, supra; Jackson v Livingston Country Club, supra), dismissal of a complaint as a matter of law is warranted when on the evidentiary materials before the court no fact issue remains for decision by the trier of fact (Hoffman v Silbert, 19 NY2d 661, supra; Luftig v Steinhorn, 16 NY2d 568, supra; Lobsenz v Rubinstein, 283 NY 600, supra; Dillard v Little League Baseball, 55 AD2d 477, supra; Maltz v Board of Educ., 282 App Div 888, affg 32 Misc 2d 492; Benjamin v Deffet Rentals, supra). We are satisfied that this is such a case for, on the basis of those parts of plaintiff’s deposition above set forth, the defense of assumption of risk was clearly established, and plaintiff has not, as it was his burden to do (Zuckerman v City of New York, 49 NY2d 557, 562) brought himself within the rule of cases such as Broderick v Cauldwell-Wingate Co. (301 NY 182) by presenting evidence in admissible form that he had no choice in the matter but to obey a superior’s direction to continue notwithstanding the danger. Indeed, nothing in plaintiff’s affidavit or in so much of his deposition as is contained in the record suggests that he acted under such an order or compulsion, nor can we agree, notwithstanding the dictum in Porter v Avlis Contr. Corp. (57 AD2d 222, 225)[3] or the irascibility of some baseball owners or managers, that we should infer that such an order had been given or that plaintiff acted under the compulsion of an unspoken order.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
*280 Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order affirmed, with costs.

. It also held in response to plaintiffs argument that assumption of the risk is unavailable to an employer who violates the statutory duty imposed by Labor Law § 200 to provide a safe place to work, that plaintiff was not within the class of persons protected by that section. Before us plaintiff has abandoned that argument and we, therefore, do not consider it.

. The risk of which she was informed prior to participation were contained in "the instructions given by Buckeye’s employee to the participants [and] included the statements that the donkeys do buck and put their heads down causing people to fall off ” (65 NY2d, at p 163).

. Though the opinion does not so state, Porter’s inference suggestion may perhaps be explained on the basis that it was an action for wrongful death to which the rule of Noseworthy v City of New York (298 NY 76) applied.