■ RONALD J. TURCOTTE et al., Respondents, v JEFFREY FELL et al., Defendants, and NEW YORK RACING ASSOCIATION, INC., Appellant.—In an action to recover damages for personal injuries, etc., the defendant New York Racing Association, Inc., appeals from so much of an order of the Supreme Court, Nassau County (Levitt, J.), dated December 10, 1984, as denied its motion for summary judgment.

Order affirmed, insofar as appealed from, with costs.

The operator of a sports facility is under the duty to exercise reasonable care to prevent injury to participants and spectators *(see, Davidoff v Metropolitan Baseball Club,* 61 NY2d 996; *Akins v Glens Falls City School Dist.,* 53 NY2d 325; *Scaduto v State of New York,* 86 AD2d 682, *affd* 56 NY2d 762). While the defendant New York Racing Association, Inc.

(hereinafter the racing association), is not the insurer of the safety of professional jockeys who utilize its facilities with full awareness of the hazards ordinarily inherent in their sport, it must exercise reasonable care in maintaining the track. As it cannot be determined from the record whether the racing association discharged this duty to plaintiff Turcotte and whether the condition of the track at the time of the accident presented just the ordinary hazards, and not hazards substantially more dangerous than the norm, its motion for summary judgment was properly denied.

Two recent Court of Appeals decisions do not require that we reach a different result. *In Arbegast v Board of Educ.* (65 NY2d 161, 164), the court held that the participation in a donkey basketball game by a teacher who admitted "that she had been informed both of the risk of injury and that 'the participants were at their own risk' " constituted an express agreement on her part to assume the risks inherent in the game, entitling the defendant to judgment as a matter of law. At bar, while plaintiff may have assumed the risks inherent in the sport, he did not *expressly* assume any risk that the track would not be maintained with a reasonable level of care.

Additionally, although the court in *Maddox v City of New York* (66 NY2d 270, 274, *affg* 108 AD2d 42) upheld an award of summary judgment against the injured plaintiff baseball player where "he was aware of the wet and muddy condition of the playing field * * * and of the particular puddle in which he fell" and he impliedly assumed the risk of those conditions by continuing to play ball, the accident in that case occurred at a time when assumption of the risk, if established, completely barred a plaintiff's recovery, namely, prior to the September 1, 1975 effective date of CPLR 1411. By contrast, even if plaintiff at bar was aware of the existing conditions in the track, as the racing association argues, any *implied* assumption of risk on his part would not, in this case, defeat his claim but merely serve as a defense in mitigation of damages to be pleaded and proved by the racing association. O'Connor, J. P., Niehoff and Eiber, JJ., concur.

Weinstein, J., dissents and votes to reverse the order, insofar as appealed from, and to grant the motion of the defendant New York Racing Association, Inc., for summary judgment dismissing plaintiff's supplemental verified amended complaint as against it, with the following memorandum: Contrary to the conclusion reached by the majority, I am of the view that summary judgment should have been granted to

the New York Racing Association, Inc. (hereinafter the racing association).

It is significant to note that plaintiffs made no allegation in either their original verified complaint or amended verified complaint regarding the condition of the maintenance of the track on the date of the accident. The sole allegation set forth therein against the racing association and the defendant stewards was the condoning of rough riding at this and prior meets by failing to restrain jockeys from committing fouls. In or about July 1979, the defendant Fell asserted a cross claim against the racing association for contribution, alleging that negligent maintenance of the track had been the proximate cause of plaintiff Ronald Turcotte's accident. Only after the assertion of that cross claim did plaintiffs, in their supplemental verified amended complaint, charge the racing association with negligent maintenance. Said claim was obviously an afterthought allegation induced by codefendant Fell's cross claim.

There is, in the present case, no real controversy regarding whether plaintiff Ronald Turcotte was fully aware of the risks of the activity and that by electing to participate therein with knowledge of the attendant risks, he consented to subject himself to them and thereby discharged the racing association from the duty to shield him therefrom. The record reveals that Ronald Turcotte is an acclaimed professional jockey, fully experienced in handling and controlling his mounts. His own deposition testimony reveals that Mr. Turcotte had previously ridden in stake races where cupping conditions, the condition of which he complains herein, existed on the track. He had ridden at Belmont Park when there was a cupping condition on the track. He unequivocally testified that there has never been a track upon which he rode as a professional jockey where he had not observed a cupping condition, which is caused by excess watering. In sum, the record established Mr. Turcotte's knowledge, based upon his own observations prior to the accident, that the cupping conditions which allegedly caused his accident could be present at any time and at any of the tracks at which he had ridden. By the injured plaintiff's own testimony, the condition of which he complains, if it in fact existed, was in no sense unusual or beyond the norm.

Between July 2, 1978, the last day before the accident on which the track was freshly rolled, and the eighth race on July 13, 1978, Turcotte had ridden in 21 races on the main track. On the day of the accident Mr. Turcotte had ridden in three races prior to the one in which he fell. He could not

recall having complained to anyone regarding the condition of the track prior to the eighth race.

It is my conclusion, based on these facts, that the injured plaintiff's knowing acceptance of the hazards inherent in his chosen profession, along with his experience with the variations of racetrack surfaces, precludes his claim, as well as his wife's derivative claim, against the racing association. As set forth by the Court of Appeals in *Arbegast v Board of Educ.,* (65 NY2d 161, 170), CPLR 1411 "does not foreclose a complete defense that by express consent of the injured party no duty exists and, therefore, no recovery may be had." In my view, it cannot reasonably be gainsaid that Mr. Turcotte's conduct constituted a knowing and express consent to the risks inherent in horse racing.

I must furthermore take issue with the majority's attempt to distinguish this case from *Maddox v City of New York* (66 NY2d 270) on the ground that Mr. Turcotte's claims, unlike those of Mr. Maddox, arose subsequent to the September 1, 1975 effective date of CPLR 1411. The *Maddox* case did not turn upon the fact that the plaintiff's injury occurred prior to the effective date of CPLR 1411. As the racing association has aptly pointed out, the Court of Appeals clearly noted that it was free to apply a post-CPLR 1411 standard to the claims of Mr. Maddox but found it unnecessary to do so. In the language of the court: "[n]otwithstanding that this is a pre-1975 case in which we would be at liberty to modify the common-law rules of assumption of the risk * * * we decline to take that step, perceiving no reasonable basis for doing so" *(Maddox v City of New York,* 66 NY2d 270, 277, *supra).*

In conclusion, the racing association's motion should have been granted. The majority's decision to the contrary demands that the racing association exercise an unreasonably high standard of care, one which approaches absolute or insurer's liability.