■ THOMAS REGAN, Appellant, v STATE OF NEW YORK, Respondent. [654 NYS2d 488] —Spain, J. Appeals (1) from an order of the Court of Claims (Hanifin, J.), entered October 24, 1995, which, *inter alia*, granted the State's motion for summary judgment dismissing the claim, and (2) from the judgment entered thereon.

During the fall of 1991, claimant was a student at the State University of New York, College at Oneonta (hereinafter the college) and a member of the college's Rugby Club (hereinafter the club). The club was an official student organization of the college and competed intercollegiately, but was not one of the college's NCAA-regulated varsity sports. The club received funding from the college's Student Association (hereinafter SA) but was not funded with State money. The club had a faculty advisor, who was also the college's intramural and recreation director.

On September 3, 1991, claimant was participating in the first official practice session on a field at the college known as Tobey Field. Tobey Field is not an official athletic field but had been the designated practice field for the club for several seasons. The first practice was being run by the newly elected student captains of the club. After giving basic instructions and splitting the group in two, the captains had several volunteers gather into a scrum to practice.* Claimant volunteered to practice at the position of hooker, the middle player in the front line, whose duty it is to kick the ball backward to other team members and into play. As an experienced fullback and wingman, claimant did not regularly play at the hooker position and was generally inexperienced in that position, although he had played there in a couple of scrumdowns during a prior tournament.

During the second scrumdown, the scrums moved prior to the call to engage and claimant's head became lodged against the opposing hooker's body. As play continued, the scrum wheeled such that claimant's teammates moved to the low side of the field. As a result, claimant's feet were lifted up by the force of his teammates pushing forward and uphill behind him. Claimant yelled "Stop!", but before the players complied, his neck was broken by the upward force of the players behind him; he was rendered quadriplegic as the result of his injury.

On November 7, 1991, claimant filed a notice of intention to file a claim against the State as the owner and operator of the college alleging, *inter alia*, negligent supervision of the practice. Thereafter, in October 1992 claimant filed his claim which was broadened to include four causes of action: failure to (1) provide supervision of the rugby practice, (2) instruct and train the rugby players, (3) properly fund the rugby club, or (4) furnish a safe playing field. After issue was joined the State moved for summary judgment upon three separate grounds: (1) that claimant's notice of claim did not mention the field defect, (2) that the club was not owned, operated, maintained or funded by the college and therefore was not subject to the ju-

---

* As outlined by the Court of Claims, "[a] scrummage is a formation in which eight members on each team 'bind' together in three rows, front to back, which forms a 'scrum' and then 'engage' a similar scrum from the opposing team. The front row of each scrum consists of three players, the hooker in the middle and a prop on each side of the hooker. The second row of each scrum consists of four players, including two lock forwards in the middle and two flankers on the outside. The final row of each scrum consists of one player called the 'No. 8' who serves as the anchor * * *. The scrums 'engage' and so begins the scrummage when 'players from each team clos[e] up in readiness to allow the ball to be put on the ground between them'."

risdiction of the Court of Claims, and (3) that claimant had assumed the risk of playing. Claimant opposed the motion and cross-moved to amend his notice of claim. The Court of Claims granted the State's motion, finding that claimant had assumed the risk of injury by playing rugby and thereby barring his recovery on all counts. Further, the court found that even if claimant were given permission to amend his notice of claim, the new causes of action would still be meritless. Claimant appeals.

Initially, we reject claimant's contention that the Court of Claims erred by granting the State's motion for summary judgment based upon the affirmative defense of assumption of risk. It is well settled that "voluntary participants in sports activities may be held to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of their participation" (*Conway v Deer Park Union Free School Dist. No. 7*, 234 AD2d 332; see, *Turcotte v Fell*, 68 NY2d 432). Further " '[i]t is not necessary to the application of assumption of risk that the injured plaintiff [foresee] the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results' " (*Swan v Town of Grand Is.*, 234 AD2d 934, 935, quoting *Maddox v City of New York*, 66 NY2d 270, 278). Where, as in the instant case, the claimant has previously participated in the sports activity on numerous occasions on the same field and under the same conditions, it is not unreasonable to conclude that he or she assumed the obvious risk of injury in participating in that activity (see, *Capello v Village of Suffern*, 232 AD2d 599, 600; *Marescot v St. Augustine's R. C. School*, 226 AD2d 507).

We find claimant's contention that he was unaware of the consequences of his participation to be unpersuasive. As set forth by the Court of Claims, given claimant's experience with rugby (almost three years at the time of the accident), his regular practice on Tobey Field, the fact that he had always practiced with student coaches and that he had seen prior injuries, albeit less serious than paralysis, dismissal was warranted as a matter of law because claimant had assumed the risks of play. The risk inherent in the sport of rugby is apparent, as is the risk inherent in football, basketball, lacrosse and other sports that involve contact. Individuals compete in such athletic events for a myriad of reasons including, but not limited to, competition, conditioning, comradery and sportsmanship. Matters involving serious injuries resulting from accidents which dramatically alter the course of a young adult's

life are unsettling; however, as aptly noted by Chief Judge Cardozo in *Murphy v Steeplechase Amusement Co.* (250 NY 479), "Volenti non fit injuria. One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary" (*id.*, at 482).

We also reject claimant's contention that the Court of Claims erred in determining that the slope of Tobey Field was not a proximate cause of claimant's injury. The Court of Claims found that claimant's expert, John Chase, cited upwards of five different events which, if prevented by responsible supervision, would have avoided claimant's injury without regard to the sloped field. Thus, the court properly found that the slope of the field could not have been a proximate cause of the accident. Moreover, because claimant's experts did not testify that the slope of the field caused his head to be malpositioned, or that he could not have been injured had he been on level ground, the Court of Claims did not err when it held as a matter of law that the sloped field was not a legal cause of claimant's injury (*see, Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 659; *compare, Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 316).

Based upon our foregoing conclusions we need not address claimant's remaining contentions.

Mercure, J. P., White, Casey and Peters, JJ., concur. Ordered that the order and judgment are affirmed, without costs.