OPINION OF THE COURT
Robert Roberto, Jr., J.
*1039 The motion by defendant Ronald Benshoff for summary judgment dismissing the complaint, and cross motion by third-party defendant Wackenhut Security Corp. for summary judgment dismissing the third-party complaint are decided as follows:
Plaintiff is employed by third-party defendant Wackenhut Security Corp. (hereinafter Wackenhut) as a “horse identifier”, a job whose apparent purpose is to insure that a racehorse that runs a race is in fact the one listed on the program. This is accomplished by examining the “night eyes”, a distinctive marking/tattoo found on the hooves or legs. This requires that the animal’s legs be lifted so that the identification can be made. The markings are then photographed by another person.
It is undisputed that the plaintiff had been employed as a horse identifier for approximately six years prior to the date of the incident that led to this suit. At her examination before trial plaintiff testified to the fact that she was aware that horses may and had kicked while the identification is conducted, and that this could be caused by any one of a number of factors — the click and/or flash of the camera used in the identification process, the way in which a leg is held, or even the mere presence of unfamiliar people behind the animal.
On January 1, 1993, the plaintiff was injured in a stall at Aqueduct Racetrack in Queens County, New York, while attempting to identify a horse named Wanna Be Alive. At the examination before trial, the plaintiff acknowledged that she had noticed that the horse was excited when it had been unloaded from its transporting van, and was still excited when she saw it in the stall. The horse also had kicked a few times in the stall prior to the incident. Nevertheless, plaintiff remained in the stall and attempted to do the identification.
The front right leg had been photographed by another of Wackenhut’s employees, an individual named James Zito, described as plaintiffs supervisor. The plaintiff held the horse’s left hind leg while she and her supervisor told a groom, employed by defendant Ronald Benshoff, to better control the horse to stop the horse from kicking. This is often done by “shanking” the horse — pulling on a strap that is fitted over the horse’s nose to distract the animal — or by covering the eyes. Plaintiff claims that the groom did not do either, or take any other effective step to calm the horse. In any event, it is apparent that the horse did not settle down. It kicked the plaintiff, causing injury.
On this motion, defendant Benshoff moves for summary judgment. It should be noted at this juncture that the answer of co- *1040 defendant Prentiss Hallenbeck, Wanna Be Alive’s owner, was previously stricken by order of this court dated August 1, 1997 for failure to attend pretrial conferences. The Benshoif motion asserts several grounds for this motion, but key is its reliance on the doctrine of assumption of risk.
Assumption of risk acts as a bar to recovery as a matter of law in two cases: where there had been an express assumption of risk by the plaintiff (Abergast v Board of Educ., 65 NY2d 161), or where the nature of the activity is such that the law imposes no duty on the defendants to safeguard knowledgeable, voluntary participants from those risks (Maddox v City of New York, 66 NY2d 270). The latter circumstance is sometimes referred to as “primary” assumption of risk. (Turcotte v Fell, 68 NY2d 432, 438.) There has been a great deal of case law on the subject, most recently (and importantly) from the Court of Appeals in several cases consolidated for purposes of appeal. (Morgan v State of New York, 90 NY2d 471.) In Morgan, the Court reviewed prior decisions, including those cited above, and summarized the law as follows: “Therefore, in assessing whether a defendant has violated a duty of care within the genre of tort-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants’ negligence are ‘unique and created a dangerous condition over and above the usual dangers that are inherent in the sport’ [citations omitted]. A ‘showing [of] some negligent act or inaction, referenced to the applicable duty of care owed to him by [the] defendants, which may be said to constitute “a substantial cause of the events which produced the injury” ’ is necessary [citation omitted]. Additionally, the application of the assumption of risk doctrine in assessing the duty of care owed by an owner or operator of a sporting facility requires that the participant have ‘not only knowledge of the injury-causing defect but also appreciation of the resultant risk, but awareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff [citations omitted]”. (Supra, at 485-486.)
As there is no express assumption of risk present in this case, movant must demonstrate that the action is barred under the so-called “primary” assumption of risk. A threshold question that first must be answered is whether the doctrine applies to this case at all, as the plaintiff was not injured during the course of the sport of horse racing itself, but rather during the course of her employment in a related but separate activity.
*1041 The Appellate Division, Third Department, has made the flat statement that the doctrine of primary assumption of risk “ ‘is limited to plaintiffs injured while voluntarily participating in a sporting or entertainment activity’ (Stirpe v Maloney & Sons, 252 AD2d 871, 872 [3d Dept 1998], quoting Comeau v Wray, 241 AD2d 602, 604.) However, the Second Department has not been so clear, stating only that the question of assumption of risk “typically” (but, by clear implication, not exclusively) is applied in the case of sporting and entertainment events and activities. (Cohen v Heritage Motor Tours, 205 AD2d 105.)
The court finds that the activity in which plaintiff was engaged is one to which the doctrine may apply. It is a matter of common knowledge that one of the central dangers to all participants in sporting activities involving horses is the strength and unpredictability of the animals themselves. (See, Harrington v Colvin, 237 AD2d 992; Rubenstein v Woodstock Riding Club, 208 AD2d 1160.) Thus, for all who work closely with horses — even if not direct participants in the sport itself— there is an elevated risk of injury that is key to the application of the doctrine. (Cf., Cohen v Heritage Motor Tours, supra.)
Applying the foregoing to the circumstances present in this case, the court concludes that the plaintiff may not pursue the movant because she assumed the risk of the injury she suffered. She was experienced and well acquainted with the propensities and inherent danger of horses. Moreover, she elected to remain in the stall even though she was aware that this particular horse was agitated and had been difficult to control.
These dispositive facts are unaffected by the plaintiffs affidavit submitted on this motion, and the testimony of James Zito, that the identifiers rely on grooms to control the animal during the identification process, and that the defendant’s employee failed to do so in this case. Even assuming for purposes of this motion that the groom did not control the horse after being asked to do so, the court cannot find that this created a “ ‘unique and * * * dangerous condition over and above the usual dangers that are inherent in the sport’ ”. (Morgan v State of New York, supra, at 485.) As indicated above, there is no dispute that a horse is a powerful and sometimes unpredictable animal, and the failure of a groom to control a horse therefore cannot be seen as so unusual that it comes within the ambit of this exception. In addition, the plaintiff continued in her attempt to complete the identification notwithstanding *1042 the excited condition of the horse. Accordingly, summary judgment is granted to movant Benshoff, and the complaint and any cross claims asserted against him are dismissed.
In view of the foregoing determination, the cross motion to dismiss the third-party complaint is also granted, as Benshoff had sought judgment over against Wackenhut in the event the plaintiff prevailed. So much of the cross motion that seeks dismissal of the second third-party action brought by Hallenbeck is granted as unopposed, as well as in view of Hallenbeck’s default at the pretrial conference and the resultant order, noted above.