■ EVELYN SALAS, Individually and as Administrator of the Estate of STEVEN A. ROMERO, Deceased, Respondent, v TOWN OF LAKE LUZERNE, Appellant. [745 NYS2d 108] —Peters, J. Appeals (1) from a judgment of the Supreme Court (Sheridan, J.), entered May 22, 2001 in Warren County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered April 30, 2001 in Warren County, which, inter alia, denied defendant's motion to set aside the verdict.

In June 1994, Steven A. Romero (hereinafter decedent) drowned in the Hudson River near Rockwell Falls and the Hadley-Lake Luzerne Bridge (hereinafter the bridge) in the Town of Lake Luzerne, Warren County. On that day, decedent and several friends, including Alana Bader, arrived in the area, walked down a path, and allegedly went through a hole in a fence before proceeding to the river where numerous people were swimming, diving and jumping off the bridge. After spending the next few hours sitting on a ledge with Bader and watching his friends bodysurf the rapids generated by Rockwell Falls, decedent decided to take a turn. This entailed wading into the area under Rockwell Falls, bodysurfing down the river and then going underwater beneath the bridge to resurface on the other side. Decedent, an inexperienced swimmer who entered the river fully clothed, drowned on his first run; his body was recovered three days later.

Plaintiff commenced this action against defendant[1] for wrongful death and personal injuries. Following joinder of issue, defendant unsuccessfully moved for summary judgment. We subsequently affirmed that determination upon a finding that it failed to proffer sufficient evidence to establish its entitlement to judgment as a matter of law (265 AD2d 770, 771).

At the jury trial, numerous witnesses testified concerning ac-

1. The complaint also named the County of Warren but, by stipulation, the action was discontinued against it (see, 265 AD2d 770, 770 n 1).

cess to the river, the physical condition of the fence and whether defendant, prior to the date of the accident, had actual or constructive notice of a defective condition in the fence. Several witnesses also testified to the character of the river, many describing the presence of rapids and white water in the immediate area where decedent went bodysurfing; Bader described the current as hard and strong.

Joan Hall, the former Town Clerk, testified that she was familiar with the area where decedent drowned, that she frequently observed people swimming in that area and that, although she denied receiving any oral or written complaints about the fencing, her trial testimony contradicted her earlier deposition testimony. Hall also testified that she was aware that another youth had drowned in that general area and that his father had written a letter concerning his drowning to David Krogmann, the former Town Attorney, who remembered forwarding the letter to the Town Supervisor; the letter was never admitted into evidence. Medical evidence by Thomas Oram, Medical Examiner and Coroner for Schenectady County, concluded that decedent underwent a period of up to five minutes of conscious pain and suffering before he drowned. Defendant's motion for a directed verdict at the close of all proof was denied by Supreme Court. The jury returned a verdict of negligence, and after apportioning 80% of the liability to defendant and 20% to decedent, it awarded $5,000,000 in damages.

Defendant thereafter sought relief pursuant to CPLR 4404 (a) by contending that decedent assumed the risks inherent in the activity in which he was engaged, that the notice of claim failed to advise of any alleged defects or lack of maintenance to the fence, that there was insufficient evidence of either written or constructive notice to defendant of any defect in its fence, and that evidence of the prior drowning should not have been admitted. Supreme Court denied the motion yet, with plaintiff's consent, reduced the $5,000,000 damage award to $1,250,000. Defendant appeals.

Recognizing that the purpose of a notice of claim is to "afford the municipality an opportunity to investigate the circumstances surrounding the claim and its merits while information is still available" (*Clark v City of Ithaca*, 235 AD2d 746, 747), defects may be disregarded if there is no prejudice (*see*, General Municipal Law § 50-e [6]). The failure of defendant to have raised this objection until after the submission of proof simply confirms the lack of prejudice (*compare*, *Matter of Wilson v City of Binghamton*, 248 AD2d 780, 780; *see*, *Rizzo v State of New York*, 141 AD2d 953, 955).

Rather than addressing the issue of whether the jury verdict should have been set aside based upon the standard of *Lolik v Big V Supermarkets* (86 NY2d 744, 746), we find it prudent to first assess whether decedent's decision to bodysurf the Hudson River by Rockwell Falls constituted the kind of unforeseeable or reckless conduct that must be deemed, as a matter of law, to interrupt any causal connection between the negligence which may be ascribed to defendant and decedent's injury (*see, Olsen v Town of Richfield*, 81 NY2d 1024).

The doctrine of assumption of risk is not an absolute defense and its application will generally be a question of fact for the jury (*see, Maddox v City of New York*, 66 NY2d 270, 279; *Weaver v Trackey*, 272 AD2d 705, 706). The Court of Appeals has guided that: "by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation * * * risks which various participants are legally deemed to have accepted personal responsibility for because they commonly inhere in the nature of those activities" (*Morgan v State of New York*, 90 NY2d 471, 484 [citations omitted]). Hence, "for purposes of determining the extent of the threshold duty of care, knowledge plays a role but inherency is the sine qua non" (*id.* at 484).

The testimony of Larry Cleveland, an investigator with the Warren County Sheriff's Department, described Rockwell Falls as a rise approximately 20 to 30 feet high, with water descending towards the bridge in the area where decedent commenced his activity. He described the rapids and rapidly moving water generated by the waterfalls to be quite turbulent and readily observable, as was the white water tail created by a large rock permanently stationed in the water. Robert Snyder, another investigator with the Sheriff's Department dispatched to the area after the drowning, testified that both the rescue squad and the scuba unit refused to attempt an underwater rescue due to the quantity of the rapids and the intensity of the undercurrent. He agreed that the rapids and white water were readily observable from Rockwell Falls to the bridge. Decedent's mother confirmed that decedent was an inexperienced swimmer who had never before swam in that area of the Hudson River, while the testimony of Bader established that both she and decedent had frequently engaged in the recreational activity of cliff jumping off rocks into still bodies of water. Bader confirmed that the waterfall was readily observable and that the roar of the water was evident as she and the others walked to the area where decedent ultimately drowned.

Upon these facts, we find that the hazardous water conditions of this naturally occurring phenomena were readily observable (*see, Sartoris v State of New York*, 133 AD2d 619, 620) and that decedent's decision to engage in this activity, when wholly unfamiliar with its characteristics, exemplifies a "disregard of his own common sense concerning his safety at the time of the accident" (*Johnson v Harrington*, 215 AD2d 857, 858, *lv denied* 87 NY2d 802). By his conduct, we further find that decedent had "consent[ed] to those commonly appreciated risks which are inherent in and arise out of the nature of the [activity] * * * and flow from such participation" (*Morgan v State of New York, supra* at 484). And, in assessing defendant's threshold duty of care, we emphasize that while "knowledge plays a role * * * inherency is the sine qua non" (*id.* at 484; *see, Weaver v Trackey*, 272 AD2d 705, 707, *supra*). Therefore, decedent's actions must be considered the only cause, or a legally superceding cause, of his injuries (*see, Olsen v Town of Richfield*, 81 NY2d 1024, 1026, *supra; Weaver v Trackey, supra* at 707; *Butler v Marshall*, 243 AD2d 971, 973; *Johnson v Harrington, supra* at 858; *Lionarons v General Elec. Co.*, 215 AD2d 851, 852-853, *affd* 86 NY2d 832; *compare, Butler v Seitelman*, 90 NY2d 987).[2]

Since the sole or legally superceding cause of this accident was decedent's own reckless conduct, we need not review the sufficiency of the evidence supporting the jury's verdict. Therefore, we reverse the judgment and the order denying defendant's motion to set aside the verdict and hereby dismiss the complaint.

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment and order are reversed, on the law, without costs, defendant's motion to set aside the verdict granted, and complaint dismissed.

---

2. We recognize our reliance upon numerous cases addressing the issue of diving into naturally occurring pools of water. We see little difference where the activity is bodysurfing on rapids generated by waterfalls, which entails a submersion under rapids into a natural, unknown phenomena containing unseen rock formations and other natural hazards.