■ Raymond Alberto Carreras et al., Respondents, v Morrisania Towers Housing Company Limited Partnership et al., Appellants-Respondents, and McRoberts Protective Agency, Inc., Respondent-Appellant, et al., Defendants. [968 NYS2d 66]—

Order, Supreme Court, Bronx County (Wilma Guzman, J.), entered on or about August 23, 2012, which, to the extent appealed from as limited by the briefs, denied the motion of defendants Morrisania Towers Housing Company Limited Partnership and NHPMN Management, LLC, for summary judgment dismissing the complaint as against them, and denied defendant McRoberts Protective Agency, Inc.'s motion for summary judgment dismissing the cross claims against it, unanimously reversed, on the law, without costs, and the motions granted. The Clerk is directed to enter judgment accordingly.

Defendant Morrisania Towers Housing Company Limited Partnership owns the residential apartment building located at 280/300 East 161st Street in the Bronx, and defendant NHPMN Management, LLC manages the building. Defendant McRoberts Protective Agency, Inc. provides security services for the premises pursuant to an agreement with Morrisania and

NHPMN. Plaintiffs, Raymond Carreras and Yolanda Lopez, Carreras's mother, reside in the building.

Although several witnesses described the fight that led to the shooting of Carreras, we will assume for purposes of this motion that Carreras's own version, as related during his deposition, is true. Carreras testified that on May 7, 2005, he was standing in the lobby of the building when he heard a commotion in the rear courtyard involving loud arguing and cursing. He observed a male, who turned out to be defendant Bakim Meekins, with his hands "in [Carreras's] sister's face," and heard his 18-year-old sister calling for their mother. There were other people with Meekins. Carreras immediately walked outside and approached his sister and Meekins. When Carreras arrived in the courtyard, Meekins punched him in the head, sending him to the ground. Carreras got back up and grabbed Meekins and banged his head against the concrete floor several times. Carreras testified that he and Meekins fought for at least five minutes, and possibly as long as 20 minutes. Carreras stated that he could not have chosen to stop fighting with Meekins because Meekins was holding his head, although he also testified that Meekins only hit him one time. He also said that he could not have let go of Meekins because "[y]ou can't just let go of somebody thinking they are going to stop hitting you."

Eventually, others broke up the fight. Then Carreras saw defendant Sonia Meekins hand Bakim Meekins a gun. Carreras was unable to run from Meekins because of a metal rod in one of his legs, which had been inserted after he had been shot several months earlier in a separate incident. Meekins shot Carreras, paralyzing him.

Carreras's mother, Lopez, who also grappled with someone on the Meekins side of the fight, testified that she came to the courtyard after the physical confrontation began, and saw her son fighting with Bakim Meekins. She asserted that they fought for approximately 15 to 20 minutes and that she decided not to try to break up the altercation because she felt that doing so would hurt Carreras's reputation.

Carreras commenced this action for negligence against Morrisania and McRoberts* for failing to secure the premises, and for assault and battery against Sonia and Bakim. Lopez asserted claims for emotional distress. Plaintiffs' bills of particulars alleged that the premises were inadequately secured and that defendants failed to stop the fight and reasonably guard

---

* A separate action against the managing agent was consolidated with this one.

against criminal activity in the building. Morrisania asserted cross claims for contractual indemnification/contribution against McRoberts and common-law indemnification/contribution against McRoberts, Sonia and Bakim.

McRoberts moved for summary judgment dismissing the complaint. It argued that, even if it was negligent in securing the building, its negligence did not proximately cause plaintiffs' injuries, because the injuries were unforeseeable and because plaintiffs' voluntary participation in the fight was a superseding cause of their injuries. McRoberts also sought dismissal of the cross claims on the basis that its only duty was contractual and that at the time of the incident in question it was in full compliance with its contractual obligations to have a guard in a security booth and two guards patrolling the building. McRoberts contended that it had no contractual duty to secure the building or to physically intervene in fights.

Morrisania and NHPMN also moved for summary judgment. They argued that they could not be held liable for a crime committed outside of the building and that they did not have a duty to prevent access to the courtyard, which they characterized as an area open to the public, since it was accessible through an unsecured parking lot. They further contended that Sonia's and Bakim's conduct was intentional and unforeseeable, and proximately caused plaintiffs' injuries, severing any causal nexus with any negligence of their own. Morrisania and NHPMN also sought summary judgment on their cross claims against McRoberts, asserting that McRoberts assumed all of their security duties in its contract.

Plaintiffs opposed the motions, arguing that Morrisania and NHPMN were liable because the incident occurred on the premises, and that they failed to exercise reasonable care to discover or prevent the Meekinses' conduct. Plaintiffs asserted that a question of fact existed as to the scope of McRoberts's duties and whether it provided comprehensive security, thereby owing plaintiffs a direct duty. They contended that the lack of reasonable security directly caused their injuries, that Morrisania and NHPMN improperly allowed unfettered access to the front and rear of the building, that the Meekinses entered the premises because of these gaps in security, that McRoberts improperly allowed them to enter, and that McRoberts failed to respond to the ensuing violence in a reasonable fashion. Plaintiffs further argued that their injuries were foreseeable, given the extensive history of violent crime in and around the building, and that Carreras's conduct was not a superseding cause of his injuries because he did not willfully precipitate the confrontation.

The motion court denied Morrisania and NHPMN's motion in its entirety, finding that the argument did occur on the premises. The court found that there was an issue of fact whether the inadequacy of the security proximately caused plaintiffs' injuries. The court dismissed plaintiffs' claims against McRoberts, holding that it did not launch an instrument of harm, that there was no evidence that plaintiffs had relied upon McRoberts, that plaintiffs were not third-party beneficiaries of the contract between McRoberts and Morrisania and NHPMN, and that McRoberts did not entirely assume Morrisania's duty to maintain the premises safely. However, the court refused to dismiss the cross claims against McRoberts, finding that the record was unclear as to whether McRoberts's guards called 911 in a timely fashion, and stated that whether they "allowed the loud argumentation to spiral out of control is a factual issue and cannot be resolved as a matter of law."

Courts in all four judicial departments have found that one who voluntarily participates in a physical fight cannot recover from a party generally charged with ensuring a safe environment. Thus, in *Williams v Board of Educ. of City School Dist. of City of Mount Vernon* (277 AD2d 373 [2d Dept 2000]), the duty of supervision normally imposed on a school was found to have been displaced by the plaintiff student's voluntary participation in a fight. Similar results obtained in *Borelli v Board of Educ. of Highland School Dist.* (156 AD2d 903 [3d Dept 1989]) and in *Ruggerio v Board of Educ. of City of Jamestown* (31 AD2d 884, 884 [4th Dept 1969] [holding that "(p)laintiff's conduct, demonstrating a lack of reasonable regard for his own safety, was a direct cause of the incident resulting in his injury and, as such, defeats his right of recovery against the defendant Board of Education"], *affd* 26 NY2d 849 [1970]).

This Court in *Vega v Ramirez* (57 AD3d 299 [1st Dept 2008]) also held that a plaintiff's willing participation in a fight negates any negligence committed by a defendant with a duty to provide security. There, in a case involving an injury sustained in a bar brawl, we stated that "[e]ven assuming a failure to provide reasonable security, any such failure was not a substantial cause of plaintiff's injuries. Plaintiff's own testimony established that he could have remained within the safety of the nightclub at the time the fight broke out and spilled outside, and that he considered such option because of the apparent intensity of the fighting and the overwhelming number of adversaries outside, yet he elected to go outside and join the fight. In so choosing, plaintiff severed any causal connection between the appellants' alleged negligence in providing reasonable security and his

injuries (*see generally Turcotte v Fell*, 68 NY2d 432 [1986])" (57 AD3d at 300).

*Turcotte v Fell*, which this Court relied on in *Vega*, did not involve a fight. Rather, the plaintiff was a professional jockey who was severely injured while riding a horse in a race, his mount having been bumped by a horse in the neighboring lane. The Court of Appeals applied the doctrine of primary assumption of the risk, which, in the context of athletics, recognizes that "[i]f a participant makes an informed estimate of the risks involved in the activity and willingly undertakes them, then there can be no liability if he is injured as a result of those risks" (68 NY2d at 437). The Court found that the plaintiff obviously assumed the risk of injury, since he made his living riding horses, and that the incident fell within the scope of his consent, since "bumping and jostling are normal incidents of the sport" (*id.* at 441). Of course, the *Turcotte* Court acknowledged that the plaintiff did not assume the risk of sustaining an injury that was intended and that fell outside the accepted boundaries of competition. Accordingly, the doctrine of primary assumption of risk is not completely analogous to the situation where a participant in a brawl is injured by his opponent, because the opponent's purpose is not to compete but to inflict maximum physical harm on him. Nevertheless, this Court appropriately applied the doctrine in *Vega* because, "[a]s a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" (68 NY2d at 439, citing *Maddox v City of New York*, 66 NY2d 270, 277-278 [1985]).

Plaintiffs consented to participating in the brawl in the courtyard, and it was not unforeseeable that the fight would escalate to the point where a gun was fired. Indeed, plaintiffs concede this, asserting that defendants should be held liable because the building was exceedingly dangerous and several shootings had occurred on the premises before the incident in question. Further, Carreras had been shot in the building's lobby a few months before the incident. Plaintiffs' reliance on *McKinnon v Bell Sec.* (268 AD2d 220 [1st Dept 2000]) is unavailing. In that case, this Court found that an issue of fact existed whether the plaintiff voluntarily participated in a physical fight with another person at a fraternity party. There was evidence in the record that the plaintiff, although he went around a security guard to approach a suspected thief whom the guard was attempting to escort off the premises, merely wanted to ask the suspect a question. The Court thus found that it was premature

to conclude that the plaintiff consented to being punched by the suspect. Here, even if Carreras did not initially intend to fight the person who was confronting his sister, that was a highly foreseeable consequence of inserting himself into the situation, especially in the environment plaintiffs depict.

In any event, there can be no question that Carreras voluntarily perpetuated the confrontation after he was first hit by Bakim Meekins. Carreras's testimony that he had to continue slamming Meekins's head on the ground because otherwise Meekins would have continued hitting him is speculative, and in any event does not constitute reasonable justification for his decision to continue fighting. Thus, because he willingly entered and continued to participate in the fracas, Carreras severed the causal link between his injury and any negligence defendants may have committed in permitting the Meekinses onto the premises (see Vega, 57 AD3d at 300). Concur—Gonzalez, P.J., Mazzarelli, Moskowitz, Renwick and Manzanet-Daniels, JJ.