[850 NYS2d 38]

LINDA ROBERTS et al., Appellants, v BOYS & GIRLS REPUBLIC, INC., et al., Respondents, et al., Defendants.

First Department, January 8, 2008

APPEARANCES OF COUNSEL

*Gregory J. Cannata & Associates,* Irvington (*Diane Welch Bando* and *Gregory J. Cannata* of counsel), for appellants.

*Lester Schwab Katz & Dwyer, LLP,* New York City (*Harry Steinberg* and *Steven B. Prystowsky* of counsel), for respondents.

### OPINION OF THE COURT

LIPPMAN, P.J.

Plaintiff, while present at a baseball field to watch her son practice with his team, sustained injuries when she strayed into the path of a bat being swung by a player taking a practice swing along the off-field side of a chain-link fence running parallel and adjacent to the field's third-base sideline. Had the accident not occurred, the player, upon the completion of his practice swings, would have passed through an opening in the fence near home plate to take his turn at bat in the then ongoing scrimmage game. The question posed is whether plaintiff may be deemed to have assumed the risk that resulted in her injury.

Pursuant to the doctrine of primary assumption of risk, one is deemed to have assumed, as a voluntary participant, spectator, or even bystander (*see Newcomb v Guptill Holding Corp.,* 31 AD3d 875, 876 [2006]; *Procopio v Town of Saugerties,* 20 AD3d 860, 861 [2005], *lv denied* 5 NY3d 716 [2005]; *Sutfin v Scheuer,* 145 AD2d 946, 947-948 [1988], *affd* 74 NY2d 697 [1989]), certain risks occasioned by athletic or recreational activity, and to the extent of such an assumption, any legally enforceable duty to reduce the risks of such activity is limited (*see Turcotte v Fell,* 68 NY2d 432, 437-439 [1986]). Although the scope of a plaintiff's assumption and the consequent limitation upon a defendant's duty may vary depending upon a particular plaintiff's capacity to appreciate the risks of an activity, generally one is deemed to have assumed "those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York,* 90 NY2d 471, 484 [1997]). This description of the scope of a plaintiff's assumption, however, is not exhaustive, for pursuant to the primary assumption of risk doctrine a plaintiff also assumes risks attributable "to any open and obvious condition of the place where [the sporting activity] is car-

ried on" (*Maddox v City of New York*, 66 NY2d 270, 277 [1985] [internal quotation marks and citation omitted]). An assumption under the doctrine is thus potentially broad and may encompass risks engendered by less than optimal conditions, provided that those conditions are open and obvious and that the consequently arising risks are readily appreciable (*see e.g. Sykes v County of Erie*, 94 NY2d 912 [2000]; *Robinson v New York City Hous. Auth.*, 268 AD2d 290 [2000]; *McKey v City of New York*, 234 AD2d 114 [1996]). A defendant's duty, then, is limited under the doctrine to "exercis[ing] care to make the conditions as safe as they appear to be. If the risks of the activity are fully comprehended or perfectly obvious, [the] plaintiff has consented to them and [the] defendant has performed its duty" (*Turcotte*, 68 NY2d at 439).

It is plain that plaintiff must be deemed to have assumed the risk that resulted in her injury. Indeed, it has been held in remarkably similar circumstances that "the danger associated with people swinging bats on the sidelines while warming up for the game" is inherent in the game of baseball and, accordingly, a risk assumed, even by child participants (*Napoli v Mount Alvernia, Inc.*, 239 AD2d 325, 326 [1997]). While it is true that plaintiff was not a participant, but a spectator, or perhaps even a mere bystander, she still assumed the risks entailed by her voluntary proximity to the game (*see Koenig v Town of Huntington*, 10 AD3d 632, 633 [2004]), among them the risk of being hit by a swung bat. Appreciation of the risk posed by a swung bat does not require thorough knowledge of the sport; the risk of injury from such a mechanism was "perfectly obvious" and thus assumed by plaintiff (*see Turcotte*, 68 NY2d at 439), despite the claimed lacunae in her knowledge and experience of the game (*see Griffin v Lardo*, 247 AD2d 825, 826 [1998], *lv denied* 91 NY2d 814 [1998], citing, inter alia, *Napoli, supra*).

Plaintiff's claim, echoed by the dissent, that the hazard was somehow concealed or sprung upon her is conclusively refuted by the record, which demonstrates that the off-field, on-deck area was obviously and logically situated relative to the on-field activity, marked with equipment, and in virtually continuous use by players during the approximately 1½ hours that plaintiff was at the field. Plaintiff testified that she observed numerous children along the above-described fence area swinging bats when she entered the ballfield, and again observed such activity from the bleachers as she watched her son practice. There was, in addition, uncontroverted testimony that shortly before the

accident, when plaintiff returned from the bleachers to the area behind home plate, she passed by a group of players holding bats in the same area, i.e., along the fence near the opening leading to the batter's box. Finally, there was testimony, also uncontroverted, that the player whose bat hit plaintiff began his fateful swing when plaintiff was still "far" (some 8 to 10 feet) away. The conclusion is inescapable that the makeshift sideline on-deck area, the complained of hazard, was, in fact, open and obvious to plaintiff and "as safe as it appeared to be."

It is the dissent's position that although plaintiff would have assumed the risk of being hit by a swung bat had she ventured onto the playing field, she may not be deemed to have assumed such a risk while she remained on the spectator side of the fence, where she had "every right" to be. Manifestly, however, whether a risk is assumed does not depend upon a plaintiff's entitlement to be in a particular location. Spectator plaintiffs in assumption of risk cases are invariably injured in places where they have "every right" to be. Classically, they are injured in situations where the game exceeds the bounds of the playing field and encroaches in some way upon an area spectators have been invited to sit in, stand in or pass through. The viability of their claims in these situations turns not upon their right to be where they are, but upon whether, in situating themselves as they have, they have consented, at least impliedly, to assume the complained-of risk. Here, the encroachment at issue, the improvised on-deck area, undeniably arose out of and flowed from the play on the immediately adjoining field and, in any event, was an open and obvious condition of the place in which the game was played. Plaintiff, who was indisputably aware of the encroachment, assumed its obvious risks. Indeed, if a 14 year old sitting in the stands at Shea Stadium, where she doubtless had a right to be, may be deemed to have assumed the relatively remote risk of being hit in the eye by a foul ball (*see Davidoff v Metropolitan Baseball Club*, 61 NY2d 996 [1984]), surely an adult must be deemed to have assumed the much more immediate risk posed by near proximity to an area where batters are practicing their swings.

Contrary to plaintiff's contention and the dissent's suggestion, the improvised on-deck area posed no unique or unduly enhanced risk. The area in question was immediately adjacent to the field, discrete, obvious and avoidable by any reasonably wary spectator or bystander. This was not a situation in which players were left to take practice swings precipitately in places

where such activity had no prior obvious presence. Nor, contrary to the impression that might be gleaned from the dissent, was the area situated along a path that was heavily or necessarily utilized by spectators. According to plaintiff, there was on the evening of the accident only one other spectator in the stands, which the photographs of record show to have been safely, easily and obviously accessible by a route not leading by the on-deck area.

The dissent relies strongly upon language from *Baker v Eastman Kodak Co.* (34 AD2d 886 [1970]) subsequently quoted in two other cited Fourth Department cases, *Havens v Kling* (277 AD2d 1017, 1018 [2000]) and *Hochreiter v Diocese of Buffalo* (309 AD2d 1216, 1217 [2003]). *Baker,* a case involving an apparently routine collision between ice skaters, was ultimately dismissed, and its dismissal affirmed, upon the ground that any negligence in the defendant's supervision of the activity could not have been the cause of the plaintiff's harm. The Court of Appeals in affirming the dismissal (28 NY2d 636 [1971]) had no occasion to, and manifestly did not, reach, much less approve, the Appellate Division's dictum that "[t]he element of risk assumed by plaintiff did not relieve defendant from the obligation of using reasonable care to guard against a risk which might reasonably be anticipated" (34 AD2d at 886). Indeed, the statement, particularly as generalized by the dissent's interpolation of the word "a" before both "plaintiff" and "defendant" and the word "does" for the word "did," betrays a significant misunderstanding as to what an assumption of risk entails. It is, in fact, the very essence of a primary assumption of risk to do precisely what *Baker* is cited to demonstrate that it does not do, namely, to "relieve [a] defendant from the obligation of using reasonable care to guard against a risk which might be reasonably anticipated." Elucidating the concept some 17 years after *Baker,* the Court of Appeals explained, "in its most basic sense it 'means that the plaintiff, in advance, has given his . . . consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone' " (*Turcotte,* 68 NY2d at 438, quoting Prosser and Keeton, Torts § 68, at 480 [5th ed]). That *Baker* is not viable authority for the proposition urged by the dissent is further demonstrated by subsequent cases, which, in evidently identical factual contexts, reject the notion, seemingly embraced by *Baker,* that a skater's assumption of risk does not relieve a defendant of the obligation

to guard against inherent and foreseeable risks of the sport (*see e.g. Zambrana v City of New York*, 262 AD2d 87 [1999], *affd* 94 NY2d 887 [2000]; *and see Vega v County of Westchester*, 282 AD2d 738 [2001]).

Logically, once a plaintiff has assumed a risk, recovery premised on injury attributable to the risk assumed is barred. Recovery may not, in such a circumstance, be had on a theory of negligent supervision. Negligent supervision remains a viable theory only insofar as the risk upon which the action is based has not been assumed. To the extent that the Fourth Department in *Havens* (*supra*) and *Hochreiter* (*supra*) has held to the contrary, we respectfully differ.

Although plaintiff contends that the affidavit of her purported expert was erroneously disregarded by the motion court on the ground that the affiant did not possess expertise in baseball field design, the affidavit was, in any event, substantively deficient. The threshold issue in this case was whether plaintiff had assumed the complained of risk; if she had, defendants were, to the extent of the assumption, relieved of any duty they may have had to safeguard her against that risk. The expert's opinion, then, as to the nature of defendants' duty would have had relevance only if some duty to guard against the claimed hazard had been retained. However, inasmuch as the law compels the conclusion that there was an assumption by plaintiff of the risk posed by the off-field on-deck area, the expert's opinion respecting what the relevant duty would have entailed had it been retained cannot avail plaintiff. Nor does the expert's conclusory opinion, to the effect that the risk presented by the off-field on-deck area was not inherent to the game, compel reevaluation of the conclusion that the risk was assumed. The off-field on-deck area may not have been ideal, but it arose out of and flowed directly from the immediately adjacent game and, in any case, was an open and obvious condition of the place where the game was played. Under these circumstances, plaintiff, in approaching the on-deck area, must be deemed to have assumed the risk to which she attributes her injury. Given plaintiff's primary assumption, the duty retained by defendants could have been no greater than to assure that the area in question was as safe as it appeared to be. That duty was met, the danger posed by the off-field on-deck area having been manifest; defendants had no additional duty to meet the significantly higher standards respecting the placement and marking of on-deck areas espoused by plaintiff's expert.

While we can and should aspire and act to make athletic and recreational endeavor safe, the primary assumption of risk doctrine reflects and implements a considered policy judgment that, if sport, with all of its many social benefits, is to persist, vigorous and unstifled by its attendant and often considerable risks, there must be tolerated a disparity between the level of safety that might be optimally or even reasonably achieved and that which the law mandates (see Benitez v New York City Bd. of Educ., 73 NY2d 650, 657 [1989]). Undoubtedly, even while this disparity is justified by resort to concepts of consent and assumption, the denial of a claim based upon an otherwise enforceable duty to ameliorate an obvious risk may seem harsh. We regret any such appearance, and understand plaintiff's sense of entitlement to a remedy for her injury, but apply the law barring her claim confident that its allocation of risks and duties represents a necessary and ultimately highly salutary compromise, reasonably accommodating both our desire, and indeed need, to engage in athletic activities entailing unusually elevated levels of risk and our equally compelling, although unfortunately sometimes irreconcilable, wish to be safe in what we do.

Accordingly, the order, Supreme Court, New York County (Jane S. Solomon, J.), entered September 25, 2006, which, to the extent appealed from as limited by the briefs, granted the motion of defendants Boys & Girls Republic, Inc. and Henry Street Settlement for summary judgment dismissing the complaint, should be affirmed, without costs.

KAVANAGH, J. (dissenting). Although factual issues abound in this appeal, it has been established that when struck by the bat, plaintiff was standing off the field of play in an area immediately adjacent to the bleachers, but not closed off to spectators, or in any way marked or delineated as an on-deck circle, or otherwise identified as a location that would be used by any of the players participating in the game. Even though faced with these facts and plaintiff's sworn testimony that before being struck she did not know that the area was being used as an on-deck circle and had not seen anyone swing a bat "as if they were going to hit a ball," the majority concludes as a matter of law that plaintiff assumed the risk of this accident. I respectfully disagree. Not only in my view do significant questions exist as to whether the condition that caused this accident was "open and obvious" to this plaintiff, but it is also not clear that what occurred—a spectator being struck in the side of the face by a bat being swung by a player off the field of play—is a risk necessarily

inherent in the game of baseball. I do not believe that defendants have provided competent evidence that conclusively establishes as a matter of law that they are entitled to summary judgment on either of these issues, and therefore I must respectfully dissent.

Plaintiff was at the park to watch her son's little league practice. When the accident occurred, she was standing on a path that went from the entrance of the park to the spectator bleachers adjacent to baseball "Field Six." Along the third base side of Field Six ran a chainlink fence that separated the bleachers from the field of play, and which had an opening that allowed entry onto the field of play. Field Six lay in front of the bleachers; behind the bleachers was a separate, grassy area where plaintiff's son's little league team was practicing.* During the practice, plaintiff sat on the bleachers. When the practice concluded, plaintiff met her son with his team and coach on the path on the spectator's side of the opening in the fence that led to Field Six. Another team was on Field Six at this time playing a scrimmage game. After speaking briefly to her son and Coach Alameda, plaintiff proceeded to walk toward the bleachers. Unbeknownst to plaintiff, as she approached the bleachers she walked near an area that had been unofficially designated as an "on-deck" circle, where one of the players involved in the scrimmage on the field was standing with an aluminum bat. The player took a warm-up swing with the bat while standing off to the side of plaintiff and struck her on the right side of her face, causing injuries, including a concussion, fractures to the upper and lower jaw and loss of teeth.

Contrary to the impression conveyed by the majority, a review of the record does not support the conclusion that plaintiff had to have been aware that the pedestrian area on the spectator's side of Field Six was being used as an on-deck circle prior to the accident. In fact, this was plaintiff's first time at this ballpark and she was there for the express purpose of watching her son participate in baseball practice. Her son, during most of the period that she was at the park before the accident, was practicing in an area that drew her attention away from the activities tak-

---

* While plaintiff and her son describe where her son was practicing as the outfield of Field Six, Coach Alameda explained that the team never took the field, but actually was practicing in the grassy area near the field, which ran from the right of the bleachers (if one was facing the bleachers) and behind the bleachers. An older team was scrimmaging on the field. In any event, as plaintiff was watching her son's practice, she was not facing the direction of the on-deck circle, which would have been to her right.

ing place on Field Six and the area where the unmarked on-deck circle was located.

Plaintiff admits that she saw children "jostling around" in this area bats in an offhand way low to the ground when she first entered the park. However, she denies ever seeing any children taking overhead swings in that area or swinging the bats "as if they were going to hit a ball." As such, it is difficult to conclude that the use of this area as an on-deck circle, given its location and its lack of appropriate identification, was open and obvious to this plaintiff prior to the accident.

In my view, plaintiff's injury resulted not from a risk commonly associated with the game of baseball, but rather from a risk that was created as a direct result of defendants permitting the use of this nondefined, nondesignated "on-deck" circle off the field of play in an area open to the public where plaintiff had every right to be. The assumption of risk doctrine does "not preclude a recovery for negligent acts which unduly enhance such risks" (*Hornstein v State of New York*, 30 AD2d 1012, 1013 [1968]). Moreover, simply because plaintiff was a spectator at an event that involved the use of bats and balls did not relieve defendants from the responsibility of properly supervising the children in their charge (*see Hochreiter v Diocese of Buffalo*, 309 AD2d 1216, 1217 [2003]) and, specifically, "to direct them regarding a safe place to stand on a field lacking fences, on-deck circles, or dugouts" (*Muniz v Warwick School Dist.*, 293 AD2d 724 [2002] [although defendants made a prima facie case for summary judgment that plaintiff assumed risk of being hit by bat when, while playing softball in gym class, he was 'on-deck' batter and was hit by a bat released by another student after hitting the ball, plaintiff's expert raised questions of fact whether risk was unreasonably increased by supervising teacher's failure to direct children with proper place to stand on field lacking an on-deck circle]). "The element of risk assumed by [a] plaintiff [does] not relieve [a] defendant from the obligation of using reasonable care to guard against a risk which might reasonably be anticipated" (*Baker v Eastman Kodak Co.*, 34 AD2d 886 [1970], *affd* 28 NY2d 636 [1971]; *Havens v Kling*, 277 AD2d 1017, 1018 [2000] [while assumption of risk doctrine barred claims against infant who swung golf club and hit infant plaintiff, the claims of negligent supervision against sponsors of golf program survived]).

Not every injury that occurs during a baseball game that is caused by a bat or a ball is necessarily "inherent" to the conduct

of the sport. This is not a situation where a spectator was struck by a baseball hit or thrown off the field of play (*Procopio v Town of Saugerties*, 20 AD3d 860 [2005], *lv denied* 5 NY3d 716 [2005]), into the stands (*Pira v Sterling Equities, Inc.*, 16 AD3d 396 [2005], *lv denied* 5 NY3d 713 [2005]) or onto an adjoining field of play (*Koenig v Town of Huntington*, 10 AD3d 632 [2004]), all of which represent risks inherent to the game. If plaintiff wandered into a marked, designated on-deck circle for batters located on the field of play and was then hit by a bat swung by a batter awaiting his or her turn at bat, I would arrive at a different conclusion. However, plaintiff testified that she was not aware, nor on these facts can we say as a matter of law that she should have been aware, that the on-deck circle was located in an area off the playing field where the public was invited to stand and gather. Accordingly, in my view it cannot be said as a matter of law that plaintiff should have been aware of the risks that the majority claims she knowingly and willingly assumed.

WILLIAMS and BUCKLEY, JJ., concur with LIPPMAN, P.J.; ANDRIAS and KAVANAGH, JJ., dissent in a separate opinion by KAVANAGH, J.

Order, Supreme Court, New York County, entered September 25, 2006, affirmed, without costs.