*912 OPINION OF THE COURT
Jack M. Battaglia, J.
In September 1999, on his 14th birthday, plaintiff John Demelio allegedly was injured at a recreational facility operated by defendant Brooklyn Indoor Sports Center Inc., doing business as John Franco’s Indoor Sports, located at 800 3rd Avenue in Brooklyn. According to his verified bill of particulars, he “sustained a detached retina after being struck in the eye by a batted baseball which ricocheted off [a] pole” that formed part of a “batting cage” at the facility. 0See verified bill of particulars 1i 4.) With this motion, defendant seeks summary judgment of dismissal pursuant to CPLR 3212.
Plaintiff alleges specifically that defendant was negligent “in unreasonably creating an enhanced risk to batters by failing to properly and adequately pad the metal pole of the batting cage . . . ; in failing to hang netting between the batter and the pole a sufficient distance from the pole to prevent a struck ball from ricocheting off the pole and back to the batter; in failing to warn the batter of the risk of ricochet posed by the pole . . . ; in failing to inform the batter and or [sic] providing the batter with goggles or protective eye wear or head gear for use while batting; in maintaining the metal poles in close proximity to the batter without providing any means to protect the batter from a ricocheting struck ball.” (Verified bill of particulars If 3.)
Defendant’s motion is based upon the doctrine of primary assumption of risk. Specifically, defendant contends: “By Using A Baseball Batting Cage Facility, The Plaintiff Assumed The Risks Inherent In The Activity.” (Affirmation 111110-34.) The motion is based entirely on plaintiffs testimony at an examination before trial, and photographs of the allegedly suspect batting cage that he identified at the examination. Defendant purports to provide the testimony of a witness on its behalf (see id. 1f 9), but no transcript is attached. In any event, defendant cites to no testimony from the transcript, which plaintiff does attach to his opposition.
“The doctrine of [primary] assumption of risk is a form of measurement of a defendant’s duty to a voluntary participant in a sporting [or recreational] activity.” (See Manoly v City of New York, 29 AD3d 649, 649 [2d Dept 2006]; see also Benitez v New York City Bd. of Educ., 73 NY2d 650, 657 [1989].) “[T]he *913 assumption doctrine applies to any facet of the activity inherent in it and to any open and obvious condition of the place where it is carried on.” (Maddox v City of New York, 66 NY2d 270, 277278 [1985] [internal quotation marks omitted], quoting Diderou v Pinecrest Dunes, 34 AD2d 672, 673 [2d Dept 1970].) “Defendant’s duty ... is a duty to exercise care to make the conditions as safe as they appear to be.” (Turcotte v Fell, 68 NY2d 432, 439 [1986].)
“[T]he doctrine requires not only knowledge of the injury-causing defect but also appreciation of the resultant risk.” (Maddox v City of New York, 66 NY2d at 278.) “[A]wareness of risk is . . . to be assessed against the background of the skill and experience of the particular plaintiff.” (Id.; see also Guzman v Iceland, 18 AD3d 704, 705 [2d Dept 2005].) “It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results.” (Maddox v City of New York, 66 NY2d at 278; see also Rivera v Glen Oaks Vil. Owners, Inc., 41 AD3d 817, 820 [2d Dept 2007].)
An alternate formulation of the doctrine of primary assumption of risk that appears in some opinions is that “[a] plaintiff who voluntarily participates in a sport or recreational activity is deemed to consent to the apparent or reasonably foreseeable consequences of that activity.” (See Yisrael v City of New York, 38 AD3d 647, 648 [2d Dept 2007]; see also Calouri v County of Suffolk, 43 AD3d 456, 457 [2d Dept 2007].) The formulation appears to have its genesis in Turcotte v Fell (68 NY2d 432 [1986]; see also Mauner v Feinstein, 213 AD2d 383 [2d Dept 1995]), and there is no indication in any of the authorities that the formulation differs in substance from the “inherency” and “open and obvious” standards. That which is “open and obvious” is “apparent,” and the risks that “inhere” in a sport or recreational activity are “reasonably foreseeable consequences.”
Because, however, “inherency is the sine qua non” of primary assumption of risk (see Morgan v State of New York, 90 NY2d 471, 484 [1997]), “the applicable standard should include whether the conditions caused by the defendants’ negligence are ‘unique and created a dangerous condition over and above the usual dangers that are inherent in the sport’ ” (id. at 485, quoting Owen v R.J.S. Safety Equip., 79 NY2d 967, 970 [1992]). The language used to define the limited terrain of liability has varied, and includes “unreasonably increased risks” and “ad *914 ditional or heightened risks” (see id. at 485, 486); “unreasonably heightened risk” and “enhanced risk factors” (see Benitez v New York City Bd. of Educ., 73 NY2d at 659); “unique or unduly enhanced risk” (see Roberts v Boys & Girls Republic, Inc., 51 AD3d 246, 249 [1st Dept 2008]); and “unreasonably enhanced risk not inherent in the sport” (see Lamey v Foley, 188 AD2d 157, 165 [4th Dept 1993]).
“[Although the assumption of risk to be implied from participation in a sport with awareness of the risk is generally a question of fact for a jury . . . , dismissal of a complaint as a matter of law is warranted when on the evidentiary materials before the court no fact issue remains for decision by the trier of fact.” (Maddox v City of New York, 66 NY2d at 279.)
And so, a defendant may establish prima facie its entitlement to judgment as a matter of law “by showing that the doctrine of primary assumption of risk applie[s].” (See Yisrael v City of New York, 38 AD3d at 648; see also Ribaudo v La Salle Inst., 45 AD3d 556, 557 [2d Dept 2007].) The defendant must show, at the least, that the risk of the injury that in fact occurred was “inherent” in the activity in which the plaintiff was engaged, or that the injury was caused by an “open and obvious” condition of the place where it occurred. (See id.; see also DiPilato v Biaseti, 6 AD3d 648, 650 [2d Dept 2004]; Loewenthal v Catskill Funland, 237 AD2d 262, 263 [2d Dept 1997].)
“[T]he risks of . . . being struck by a ball or bat during a baseball game . . . are risks which various participants are legally deemed to have accepted personal responsibility for because they commonly inhere in the nature of th[e] activit[y].” (Morgan v State of New York, 90 NY2d at 484; see also Roberts v Boys & Girls Republic, Inc., 51 AD3d at 248; Muniz v Warwick School Dist., 293 AD2d 724 [2d Dept 2002].) “The risks of a [baseball] game . . . include the risks involved in the construction of the field.” (Maddox v City of New York, 66 NY2d at 277.)
Where a player or bystander is struck by a ball or bat at a baseball game, a defendant may make its prima facie showing upon those facts, and, unless the plaintiff can raise a triable issue with competent evidence that the defendant “unreasonably increased the inherent risks . . . associated with the game of baseball,” the defendant will be entitled to summary judgment dismissal of the complaint. (See Pira v Sterling Equities, Inc., 16 AD3d 396, 397 [2d Dept 2005]; see also LaRocca v Pleasant *915 Val. Little League, 15 AD3d 628 [2d Dept 2005]; Koenig v Town of Huntington, 10 AD3d 632, 633 [2d Dept 2004].) But even a plaintiff who has been struck by an errant ball or bat may defeat summary judgment with an appropriate showing. (See Muniz v Warwick School Dist., 293 AD2d at 724; Parisi v Harpursville Cent. School Dist., 160 AD2d 1079, 1080 [3d Dept 1990].)
Similarly, a defendant may make a prima facie showing with evidence that, during play of a baseball game, the plaintiff collided with a fence or pole in the outfield, an “open and obvious” condition of the field, and, if the plaintiff fails to raise a triable issue of fact as to whether the fence or pole “unreasonably increased the risks inherent in the game,” the defendant will be entitled to dismissal. (See Schoppman v Plainedge Union Free School Dist., 297 AD2d 338 [2d Dept 2002]; Bailey v Town of Oyster Bay, 227 AD2d 427, 427-428 [2d Dept 1996]; Ferraro v Town of Huntington, 202 AD2d 468, 469 [2d Dept 1994]; Pascucci v Town of Oyster Bay, 186 AD2d 725, 726-727 [2d Dept 1992].)
Here, however, plaintiff was not injured during play or practice on a baseball field. Undoubtedly, some of the risks that “inhere” in the game of baseball or that will be “open and obvious” on the playing field are also risks that “inhere” or will be “open and obvious” in the simulation provided in the indoor constructed environment of batting cages and pitching machines, but they are not the same. Because a risk of injury is not assumed without awareness “of the potential for injury of the mechanism from which the injury results” (see Maddox v City of New York, 66 NY2d at 278), and the “mechanism” that allegedly caused plaintiffs injury is not the same as those addressed in the decided cases involving injury during play or practice on a field, defendant’s prima facie showing on this motion must necessarily differ.
This court has been able to find only one decision addressing a claim that injury was caused by a defect in a batting cage, and two decisions addressing claims of injury resulting from the use of a pitching machine. Although plaintiff here was swinging at a baseball projected at him by a pitching machine, there is no allegation that his injury was caused, even in part, by the machine or its operation. As a potential “mechanism” of injury that modifies the dynamics of play, however, a pitching machine presents a circumstance analogous to a batting cage.
In Hanna v State of New York (46 Misc 2d 9 [Ct Cl 1965]), the plaintiff was umpiring behind a batting cage, “consisting of a *916 metal frame covered by a netting of twine forming openings about two inches square,” when “a foul tip left the player’s bat” and “struck and shattered the right lens of his eyeglasses, causing particles of glass to enter and cut the cornea of his right eye” (id. at 10-11). The court found that “the ball did not pass through the net,” and that “any worn or defective condition of the net . . . was not the proximate cause of the accident.” (Id. at 12.) Rather, because the plaintiff,
“an intelligent young man, . . . [was] familiar with the game of baseball and . . . aware of the risks involved in acting as he did, . . . aware that there purposely was slack in the netting of the [cage] and . . . chargeable with knowledge that to stand with his face too close to the net would be dangerous, . . . his act in doing so constituted contributory negligence which was the proximate cause of the accident.” (Id. at 12-13.)
“[T]hree or four foul tips struck the net before the one that injured him.” (Id. at 14.)
In Hawley v Binghamton Mets Baseball Club (262 AD2d 729 [3d Dept 1999]), the court rejected the plaintiff’s contention “that the operator of [a] pitching machine enhanced plaintiffs risk by adjusting the machine so as to cause the balls to be projected progressively higher into the air,” because, among other reasons, “plaintiff should have reasonably expected to catch balls with varying trajectories while participating in a pop-fly contest” (id. at 731-732). Moreover, “because the risk of fielding fly balls without wearing protective eyewear is so obvious, [the court] rejected] the contention that defendants had a duty to provide such eyewear or warn plaintiff of the danger of wearing regular glasses” (id. at 732).
The plaintiff in Harris v Cherry Val.-Springfield School Dist. (305 AD2d 964 [3d Dept 2003]) was struck near his eye by a “wild” pitch from a pitching machine (see id. at 764). Defendant was granted summary judgment on the ground of primary assumption of risk (see id.). The plaintiff, “a very experienced and knowledgeable baseball player, . . . was fully familiar with pitching machines and was aware that pitches thrown by such machines could be wild.” (Id. at 964-965.) The plaintiff “previously had been hit by a wild pitch thrown from another pitching machine.” (Id. at 365.)
These three opinions illustrate that, where the injury is alleged to have been caused by some characteristic of play that is *917 not itself “inherent” in a sport as usually played, but is allegedly caused instead by some addition to or modification of the activity, such as a batting cage or pitching machine, the plaintiffs appreciation of the risk must be determined by reference to the addition or modification. In other words, the “mechanism” of the injury consists of, or at least includes, the activity in the manner in which it is conducted. A defendant seeking summary dismissal of the plaintiffs claim in such a case must show prima facie that the risk under those circumstances was appreciated and accepted. As will appear, defendant here has failed to do so.
As noted, plaintiff was 14 years old on the day he was injured at defendant’s facility. He was 5 feet, 10 inches tall, and weighed approximately 150-160 pounds. He had played organized baseball since he was seven or eight years old, had been using batting cages since he was about 10, and had been using defendant’s facility since he was 10 or 11, visiting it several times a month. Plaintiff might fairly be characterized as “an experienced amateur baseball player” (see Kennedy v Rockville Ctr. Union Free School Dist., 186 AD2d 110, 111 [2d Dept 1992]), and, indeed, possessed knowledge and experience not only of batting cages generally, but of the batting cages at defendant’s facility.
At his examination before trial, plaintiff identified photographs as depicting the batting cage he had been using when he was injured. He had frequently used that cage before his accident, and neither the “layout” nor the “equipment” had been changed during that time. (Examination before trial of John Demelio, exhibit D to affirmation at 14.) Plaintiff continued to use the batting cages at defendant’s facility after the accident without incident.
Most important.to defendant’s position on this motion, plaintiff acknowledged at his deposition that “[i]n the times that [he] had been playing baseball” before the accident, he had seen a baseball strike a pole, fence, or wall, and “deflect” and “bounce into the field of play.” (Id. at 30.) He was not asked, however, and did not testify, as to whether any player was struck by the deflected ball.
Defendant’s counsel concludes from this evidence that “[t]his type of risk is inherent at a batting cage facility,” and “[t]his is why participants at a batting cage are given helmets to wear during the course of hitting within the batting cage, [sic] itself.” (Affirmation 11 32.) Except for the use of helmets, supported by *918 plaintiffs deposition testimony, counsel’s conclusory statement is not supported by any evidence, and is not shown to be founded on counsel’s personal knowledge or expertise. To the contrary, plaintiff testified at his deposition that he had never seen a ball ricochet on his previous visits to defendant’s facility, and “never heard of’ “anyone else who had suffered any type of injury as a result of the balls ricocheting in the batting cages.” (Demelio examination before trial at 22-23.)
In other words, to the extent that defendant’s showing on this motion includes any direct evidence on whether the “mechanism” of plaintiffs injury is “inherent at a batting cage facility” (affirmation 11 32), or that the injury-causing condition was “open and obvious,” the only evidence is that the risk is and was neither. The use of helmets provides circumstantial evidence of the existence of some risk of injury and awareness of the risk by participants. But, in the absence of any description of batting cages, batting cage facilities, and the usual manner of play, either generally or at defendant’s facility, as well as the associated risks of injury, either founded on professional expertise or not, any inference arising from the use of helmets is insufficient to satisfy defendant’s burden on this motion.
Assuming, however, that defendant has met its burden on this motion, plaintiff must raise a triable issue as to whether the doctrine of primary assumption of risk applies to preclude plaintiffs recovery. In his opposition, plaintiff contends that his injury “was caused by defendant’s defectively designed, constructed and maintained safety device, the netting and frame separating each of the defendant’s batters boxes, and thus was not a risk inherent in the use of batting cages”; rather, “the risk that caused plaintiff’s injury was an enhanced risk and thus insufficient to establish the defense of assumption of the risk.” (Affirmation in opposition to motion for summary judgment 1i 8.)
Plaintiff supports his opposition with his own affidavit, the affidavit of a “sports and recreational safety consultant” (affidavit in opposition to motion for summary judgment If 1), and the transcript of the deposition testimony of defendant’s witness, David Shamah. The testimony of defendant’s witness is cited only to describe the configuration of defendant’s facility, including the arrangement of the batting cages, and the design and construction of the batting cages themselves, including the poles and vinyl netting that served to separate the six spaces for batting. (Affirmation in opposition to motion for summary judgment 1Í1Í 4, 6.)
*919 Plaintiff’s affidavit is comprised of assertions directed to establishing that he was not aware of any risk that a ball he hit, either on a baseball field or in one of defendant’s batting cages, could ricochet back at him after striking a fence or pole. (Affidavit in opposition to motion for summary judgment If If 3-4.) The assertions are helpful only to the extent that such a risk does not “inhere” in the game of baseball or the use of batting cages, and is not a consequence of an “open and obvious” condition of the place of play. Although relatively young (again, 14), because of his acknowledged experience with baseball and batting cages, he would presumably know what “[a] reasonable person of participatory age or experience [would] be expected to know” (see Morgan v State of New York, 90 NY2d at 488).
Plaintiff also offers that he “normally use[s] a helmet when batting during a game or practice to protect [his] head from wild pitches,” and that he “wore a helmet the day of [his] accident because [he] was hitting baseballs that were being thrown by a pitching machine.” (Affidavit in opposition to motion for summary judgment If 5.)
The core of plaintiff’s opposition is the affidavit of Arthur H. Mittelstaedt, Jr., Ed. D., a “sports and recreation safety consultant.” (Affidavit in opposition to motion for summary judgment ¶ 1.) Defendant’s reply does not challenge Dr. Mittelstaedt’s qualifications to render expert opinion on the issues here, and so the court will only note that Dr. Mittelstaedt “was involved in approximately eight projects involving the planning, design and construction, including safety considerations, of batting cages.” (Id. ¶ 2.)
Dr. Mittelstaedt offers his opinions based upon his review of the deposition testimony of plaintiff and defendant’s witness, four photographs, a “contract diagram of defendants [sic] batting cages,” and an “architectural drawing of the defendant’s facility.” (Id. 11¶ 3.) Dr. Mittelstaedt concludes that defendant “not only created a ricochet risk which would not be an inherent risk in a properly constructed batting cage, but [defendant] by failing to address the ricochet risk once it was created by padding the poles substantially enhanced or increased the ricochet risk to its customers who used the cages.” (Id. ¶ 8.)
Specifically, according to plaintiffs expert, the offending pole “created an unreasonable risk of ricochet that was not an inherent risk in the use of batting cages in 1998 when the defendant’s facility opened or on the date of plaintiffs accident” (id. ¶ 4); “defendant’s placement of metal poles in close proximity to and *920 within the plaintiffs forward hitting radius . . . did not conform to safe standards of batting cage design and construction accepted in the industry, and created an unreasonable ricochet risk” (id. ¶ 5); “the industry standard in design and construction of batting cages, at the time of this occurrence, eliminated ricochet risks” by a number of described methods (id. ¶ 6); and with respect to the batting cage plaintiff was using when he was injured, “[i]t was contrary to accepted safety practices in the industry to attach the netting . . . directly to the pole, and leave the pole unpadded, or unprotected from ball impact by properly hung netting” (id. ¶ 7).
Plaintiff argues that “the fact that the claimed risk, negligent condition causing the plaintiffs injury was created by the defendant through its design, maintenance and operating of a batting cage safety device (frame and netting separating batting cages) puts this case squarely on point with Siegel v City of New York,” decided by the Court of Appeals with Morgan v State of New York (90 NY2d 471 [1997]). (Affirmation in opposition to motion for summary judgment 1112.)
“As in Siegel where the plaintiff was injured by reason of defective netting used to prevent tennis balls from going into adjacent courts the plaintiff here was injured by reason of a defectively designed and constructed netting frame the purpose of which was to prevent baseballs from being hit into adjacent batting cages.” (Id. ¶ 16.)
The torn net in Siegel, which “may qualify as and constitute an allegedly negligent condition occurring in the ordinary course of any property’s maintenance” (Morgan v State of New York, 90 NY2d at 488), represents a different type of risk than the design defect alleged here. But Siegel certainly illustrates that, although nets and poles may be “inherently part of the playing and participation of [a] sport at. . . facilities” like tennis courts and batting cages, an allegedly defective net or pole “is by its nature not automatically an inherent risk of [the] sport as a matter of law for summary judgment purposes.” (See id.)
An expert affidavit may create a triable issue as to whether the design of a sports facility “was unique and created a dangerous condition over and above the usual dangers that are inherent in the sport.” (See Owen v R.J.S. Safety Equip., 79 NY2d at 970; see also Lamey v Foley, 188 AD2d 157, 164-165 [4th Dept 1993].) Relevant are “rules and customs whose purpose is to enhance the safety of the participants” and “the standards maintained by other similarly used facilities.” (See Turcotte v *921 Fell, 68 NY2d at 440, 442; see also Greenburg v Peekskill City School Dist., 255 AD2d 487, 488 [2d Dept 1998] [“recommended minimum safety standard”]; compare Ribaudo v La Salle Inst., 45 AD3d at 557; Loewenthal v Catskill Funland, 237 AD2d at 263 [“prevailing industry standards”].)
Defendant argues that plaintiffs expert’s affidavit is insufficient to raise a triable issue of fact, because it is “nothing more than a conclusory statement with no basis or support in this record.” (Reply affirmation ¶ 22.) Defendant notes that the expert “apparently . . . never even visited the subject facility,” and “does not put forth any measurements taken or even discuss . . . what the proper measurements or dimensions would be.” (Id.) According to defendant, the expert, moreover, “fails to delineate any specific industry standards,” and “fails to demonstrate that the standards cited by him represent the general custom or usage in the industry.” (Id. ¶ 25.)
First, Dr. Mittelstaedt’s affidavit is not devoid of probative value simply because he did not inspect defendant’s facility. The photographs, “contract diagram,” and architectural drawing can be a sufficient basis for an expert opinion. (See Torres v W.J. Woodward Constr., Inc., 32 AD3d 847, 849 [2d Dept 2006].) Defendant itself relies on the photographs, and the other documents were apparently obtained from defendant, and are not challenged by it.
Defendant is correct that Dr. Mittelstaedt’s opinions are not supported by specific measurements, nor does he report any test results or reports of injury, to support his opinion that the design of defendant’s batting cage “created an unreasonable risk of ricochet that was not an inherent risk in the use of batting cages” (affidavit in opposition to motion for summary judgment ¶ 4), and that defendant’s design “substantially enhanced or increased the ricochet risk” (id. ¶ 8). Defendant relies upon Diaz v New York Downtown Hosp. (99 NY2d 542 [2002]) for the principle that “[w]here [an] expert’s ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . the opinion should be given no probative force” (id. at 544).
But even Diaz recognizes that some opinions may be supported by “knowledge acquired through professional experience.” (See id. at 545; see also Walker v Commack School Dist., 31 AD3d 752, 753 [2d Dept 2006]; Delgado v Markwort Sporting Goods Co., 11 Misc 3d 1072[A], 2006 NY Slip Op 50528[U], *5-8 [Civ Ct, Kings County 2006].) And plaintiffs showing in opposition must be considered in light of defendant’s purported prima *922 facie showing, which includes no direct evidence, expert or otherwise, that the risk of ricochet was “inherent” or “open and obvious” in the use of batting cages.
Defendant is also correct that Dr. Mittelstaedt provides little to support his understanding of the “industry standard in design and construction of batting cages” (id. ¶ 6). But he does provide “Standards for Batting Range Safety & Operation” from a manufacturer of batting cages that he says “are illustrative of the industry standard” (id.). In industries that are not regulated or organized for common purposes, custom and practice may not be found described in one document.
Plaintiffs burden on this motion is to raise a triable issue, not to make a prima facie showing, as to defendant’s liability; they are not necessarily the same thing. (See American Honda Fin. Corp. v Progressive Cas. Ins. Co., 290 AD2d 850, 852 [3d Dept 2002]; Ocean Diagnostic Imaging, Inc. v Utica Mut. Ins. Co., 6 Misc 3d 131 [A], 2005 NY Slip Op 50081[U], *2 [App Term, 2d Dept 2005].) The issue here, moreover, is not whether defendant breached a duty measured by industry standards, but whether a duty is owed measured by the risks inherent in the activity. Particularly in light of defendant’s showing, the court concludes that, notwithstanding any deficiencies in the expert affidavit, plaintiff has raised a triable issue as to the applicability of the doctrine of primary assumption of risk. The court declines plaintiffs request, however, that it search the record on this motion, and grant summary judgment to plaintiff on the question.
Defendant’s motion is denied.