# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**85**

**CA 14-01215**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, SCONIERS, AND DEJOSEPH, JJ.

---

BRADY LITZ, PLAINTIFF-APPELLANT,

V                                                  MEMORANDUM AND ORDER

CLINTON CENTRAL SCHOOL DISTRICT, JOHN HUGHES,
IN HIS CAPACITY AS HEAD HOCKEY COACH OF THE
CLINTON HIGH SCHOOL HOCKEY TEAM, ROB HAMELINE,
IN HIS CAPACITY AS ASSISTANT HOCKEY COACH OF
THE CLINTON HIGH SCHOOL HOCKEY TEAM,
MICHAEL MARTINI, DEFENDANTS-RESPONDENTS,
ET AL., DEFENDANTS.

---

DAVID R. DIODATI, NEW HARTFORD, FOR PLAINTIFF-APPELLANT.

SUGARMAN LAW FIRM, LLP, SYRACUSE (JENNA W. KLUCSIK OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS CLINTON CENTRAL SCHOOL DISTRICT, JOHN HUGHES,
IN HIS CAPACITY AS HEAD HOCKEY COACH OF THE CLINTON HIGH SCHOOL HOCKEY
TEAM AND ROB HAMELINE, IN HIS CAPACITY AS ASSISTANT HOCKEY COACH OF
THE CLINTON HIGH SCHOOL HOCKEY TEAM.

SANTACROSE & FRARY, ALBANY (AMANDA GEARY OF COUNSEL), FOR
DEFENDANT-RESPONDENT MICHAEL MARTINI.

---

Appeal from an order of the Supreme Court, Oneida County
(Bernadette T. Clark, J.), entered October 21, 2013. The order
granted the motions of defendants Clinton Central School District,
John Hughes, in his capacity as Head Hockey Coach of the Clinton High
School Hockey Team, Rob Hameline, in his capacity as Assistant Hockey
Coach of the Clinton High School Hockey Team and Michael Martini for
summary judgment and dismissed the complaint against those defendants.

It is hereby ORDERED that the order so appealed from is
unanimously affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for
injuries he sustained in a locker room following hockey practice.
Plaintiff was walking barefoot toward the shower area when defendant
Michael Martini, one of plaintiff's teammates, stepped backwards onto
plaintiff's right foot. Martini was still wearing his hockey skates
at the time of the accident. Defendants Clinton Central School
District, John Hughes, and Rob Hameline (collectively, school district
defendants), and Martini separately moved for summary judgment
dismissing the complaint on the ground that plaintiff had assumed the
risks associated with the sport of hockey. Supreme Court granted the

motions, and we affirm.

"The assumption of risk doctrine applies where a consenting participant in sporting and amusement activities 'is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks' " (*Bukowski v Clarkson Univ.*, 19 NY3d 353, 356, quoting *Morgan v State of New York*, 90 NY2d 471, 484; *see Custodi v Town of Amherst*, 20 NY3d 83, 88).  By engaging in such an activity, a participant "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan*, 90 NY2d at 484).  "The question of whether the consent was an informed one includes consideration of the participant's knowledge and experience in the activity generally" (*Turcotte v Fell*, 68 NY2d 432, 440; *see Morgan*, 90 NY2d 485-486).

Initially, we reject plaintiff's contention that assumption of the risk does not apply because he was no longer playing hockey at the time of his injury.  It is undisputed that the accident "occurred in a designated athletic or recreational venue" and that the activity at issue "was sponsored or otherwise supported by the [school district] defendant[s]" (*Custodi*, 20 NY3d at 88).  On the date of the accident, plaintiff was practicing with his high school hockey team at the Clinton Arena, a municipal athletic and recreational facility.  The accident took place immediately following practice in one of the arena's locker rooms, which was designated for the exclusive use of the high school hockey team (*cf. id.* at 86, 89).  Contrary to the contention of plaintiff, we conclude that he was still "involved" (*id.* at 88), or "participating" (*Hawkes v Catatonk Golf Club*, 288 AD2d 528, 529), in the sport of hockey at the time of his injury.  "[T]he assumption [of risk] doctrine applies to any facet of the activity inherent in it" (*Maddox v City of New York*, 66 NY2d 270, 277 [internal quotation marks omitted]).  Here, plaintiff and his teammates stored their hockey equipment, including their skates, in the arena locker room.  Plaintiff described his routine as follows:  "[G]et there before practice, get ready and get on the ice before you're supposed to be on the ice, get off, . . . , get undressed, shower and make sure your stuff is hanging up."  Once practice had concluded on the night of the accident, plaintiff and his teammates "all got off the ice as a team" and proceeded into the locker room to change out of their equipment.  Martini and another teammate remained on the ice to pick up the nets and pucks, which took less than 10 minutes.  The two players then headed into the locker room, put away the pucks, and began getting undressed.  Martini was in the process of removing his equipment when the blade of his skate came into contact with plaintiff's foot.

We conclude that it would be inconsistent with the purpose of the assumption of the risk doctrine to isolate the moment of injury and ignore the context of the accident (*see generally Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878, 882).  The policy underlying the assumption of the risk doctrine is to encourage free and vigorous participation in athletic and recreational pursuits by "shielding co-participants, activity sponsors or venue owners from 'potentially crushing liability' " (*Custodi*, 20 NY3d at 88, quoting *Bukowski*, 19

NY3d at 358; *see Trupia v Lake George Cent. Sch. Dist.*, 14 NY3d 392, 395). Here, the school district defendants, "solely by reason of having sponsored or otherwise supported some risk-laden but socially valuable voluntary activity[,] ha[ve] been called to account in damages" (*Trupia*, 14 NY3d at 396). We therefore conclude that there is a "suitably compelling policy justification . . . to permit an assertion of assumption of risk in the present circumstances" (*id.*).

The question thus becomes whether plaintiff assumed the risk of the injury-causing acts at issue. "As a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" (*Turcotte*, 68 NY2d at 439; *see Custodi*, 20 NY3d at 88). "[A]wareness of risk is not to be determined in a vacuum [but] . . . is, rather, to be assessed against the background of the skill and experience of the particular plaintiff" (*Maddox*, 66 NY2d at 278; *see Turcotte*, 68 NY2d at 440). "[I]t is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (*Maddox*, 66 NY2d at 278).

Here, we agree with the school district defendants and Martini that they met their burden of establishing that the risk of being injured by a skate blade is "inherent in the sport" of hockey and that plaintiff was aware of, appreciated the nature of, and voluntarily assumed that risk (*Turcotte*, 68 NY2d at 441; *see Bukowski*, 19 NY3d at 356; *Morales v Beacon City Sch. Dist.*, 44 AD3d 724, 726), and that plaintiff failed to raise an issue of fact with respect thereto (*see Zuckerman v City of New York*, 49 NY2d 557, 562). At the time of the accident, plaintiff had been a member of his high school's varsity hockey team for three years and had been playing organized hockey for over a decade. Plaintiff acknowledged that the use of skates with very sharp edges is part of the sport of hockey, and he testified at his deposition that he was aware of the need to be careful around people wearing hockey skates. Notably, plaintiff testified that he was "always worried" about the possibility of "being stepped on or something with a hockey skate, just getting cut by the skate"—the precise mechanism of injury in this case—and he acknowledged that such a possibility was "part of the sport" of hockey. Although plaintiff was not aware of any similar incidents at the Clinton Arena, he testified that "there's been other injuries with skates in the [National Hockey League and] other leagues." Plaintiff further testified that he was aware that hockey players often wear their skates into the locker room: "I've always known since I was little, since I started—you know—*after practice or a game, you walk in on skates*" (emphasis added). Indeed, the floor of the arena locker room was rubberized for that very purpose. Plaintiff testified that he "always" walked around the locker room with bare feet when he did not have his skates on, and he acknowledged that he was "aware of the need to be careful walking with people still having skates on in the locker room." Defendants therefore established as a matter of law that being

injured by a wayward blade in the locker room before, during, or immediately after a game or practice is "within the known, apparent and foreseeable dangers of the sport" of hockey (*Turcotte*, 68 NY2d at 441).

In opposition to the motion, plaintiff failed to raise an issue of fact with respect to whether defendants "unreasonably increased the plaintiff's risk of injury" (*Morales*, 44 AD3d at 726; *see Duffy v Suffolk County High Sch. Hockey League*, 289 AD2d 368, 369).  Plaintiff contends that the risk of injury was unreasonably increased by the layout of the locker room.  Although a participant does not assume "concealed or unreasonably increased risks" or "unique and . . . dangerous condition[s] over and above the usual dangers that are inherent in the sport" (*Morgan*, 90 NY2d at 485 [internal quotation marks omitted]), the assumption of risk doctrine extends to "risks engendered by less than optimal conditions, provided that those conditions are open and obvious and that the consequently arising risks are readily appreciable" (*Roberts v Boys & Girls Republic, Inc.*, 51 AD3d 246, 248, *affd* 10 NY3d 889; *see Bukowski*, 19 NY3d at 356; *Martin v State of New York*, 64 AD3d 62, 64, *lv denied* 13 NY3d 706).  Here, the condition of the locker room, while perhaps not ideal, was open and obvious, and any risks were readily appreciable (*see Roberts*, 51 AD3d at 248).  Thus, the school district defendants "fulfilled their duty of making the 'conditions as safe as they appear[ed] to be' " (*Bukowski*, 19 NY3d at 357, quoting *Morgan*, 90 NY2d at 484).

With respect to Martini, plaintiff "failed to present evidence that [Martini]'s conduct was reckless or intentional" (*Wollruch v Jaekel*, 103 AD3d 524, 524).  Indeed, plaintiff acknowledged that Martini was not engaged in horseplay or any other improper conduct at the time of the accident.  Martini did not know that plaintiff was behind him when he stepped backwards, and plaintiff did nothing to alert Martini of his presence.  As Martini testified at his deposition, he merely "took the wrong step at the wrong time."

In sum, we conclude that plaintiff's injuries were "simply the result of a 'luckless accident' " arising from his voluntary participation in a school-sponsored athletic activity (*Bukowski*, 19 NY3d at 358, quoting *Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 659), and thus that the court properly dismissed the complaint against the school district defendants and Martini based on assumption of the risk.

Entered:  March 20, 2015                         Frances E. Cafarell
                                                 Clerk of the Court